Rosanna Gleim, Appellant, *v.* Joseph S. Harris, John Lowber Welsh and Edward M. Paxson, Receivers of The Philadelphia & Reading Railroad Company.

*Negligence—Railroads—Crossings—" Stop, look and listen."*

In an action against a railroad company to recover damages for the death of plaintiff's husband at a grade crossing, a nonsuit is properly entered where it appears that the deceased in driving along a public road stopped at a point about three hundred and thirty feet from the railroad, and then continued without again stopping to look and listen, although at a number of places within the three hundred and thirty feet he could have seen the train by which he was killed.

Argued April 28, 1897. Appeal, No. 155, Jan. T., 1897, by plaintiff, from judgment of C. P. Cumberland Co., refusing to take off nonsuit. Before STERRETT, C. J., WILLIAMS, McCOLLUM, MITCHELL and FELL, JJ. Affirmed.

Trespass for death of plaintiff's husband.

At the trial the court entered a compulsory nonsuit, which it subsequently refused to take off. BIDDLE, P. J., filed the following opinion by which the facts appear.

About 6 o'clock in the morning of December 10, 1895, Michael Gleim, the husband of plaintiff, started from home with four horses hitched in a large country wagon for the purpose of getting a load of wood at the mountain. In the southern end of the borough of Mount Holly Springs the turnpike on which he traveled intersects the defendant's railroad at an acute angle, and when he was 330 feet from this crossing, he stopped the horses and looked and listened for an approaching train. He rode the saddle horse and drove the team, while his nephew Charles, who accompanied him, stood in the wagon near the middle of the bed and at his uncle's instruction kept watch for the cars. The morning was a cold one, the road was frozen, and the wagon made considerable noise as it moved along over the hard ground.

Mr. Gleim had on a large overcoat, with a comforter around his neck and a cap pulled down over his ears. At the point of stoppage a person standing on the road could have seen up the

track over 1,400 feet, but one standing in the wagon could not see so far on account of the limbs of the trees which lined the side of the road. Neither Mr. Gleim nor his nephew heard or saw anything which indicated that a train was coming, and the former then said, " I guess we are perfectly safe to go on," and the latter replied, " I would think so," whereupon the horses were started at a slow trot and at that pace had just passed over the crossing when the rear end of the wagon was struck by a train. The result of the collision was that plaintiff's husband was thrown violently to the ground and sustained injuries from which he died one week subsequently. A danger signal was blown by the engineer when the locomotive was about 150 feet distant from the crossing, and at that time the front horse had crossed the railroad and the rear ones were on it. Charles testified that it was daylight, and that he was constantly looking in the direction of the approaching train from the moment the horses were started at a trot until the danger whistle was blown, and that he did not see the train until he heard the whistle; yet how he could have failed to see it, except through negligence, is inexplicable.

The evidence proved conclusively that from various places on the last 330 feet of road over which the horses passed, a person could see between the trees about 1,400 feet up the track: and that the nearest tree to the crossing was 28 feet from the middle of the rails, between which point and the track there was an unobstructed view up the railroad for 1,300 feet. The evidence also was quite convincing that the regular station signal was blown at the whistling post, which was 1,113 feet from the scene of the accident, but whether or not this occurred is unessential to a determination of the case. It being proved that the deceased, at a number of places within 330 feet of the crossing, could have seen the train by which he was killed, his failure to stop, look and listen whilst traversing said distance was negligence per se, and the judgment of nonsuit was therefore properly entered. The legal principle involved is distinctly laid down in Railroad Co. v. Beale, 73 Pa. 504; Myers v. Railroad Co., 150 Pa. 386; Gangawer v. R. R., 168 Pa. 265, and numerous analogous cases.

And now, November 5, 1896, the motion to set aside the judgment of nonsuit is dismissed.

*Error assigned* was refusal to take off nonsuit.

*H. S. Stuart* and *John Hays*, for appellant.—The defendant was guilty of negligence: Lake Shore etc. Ry. Co. v. Frantz, 127 Pa. 297; Phila. & Reading R. R. v. Killips, 88 Pa. 405; Matthew v. P. & R. R. R., 161 Pa. 28; Roberts v. Del. & Hudson Canal Co., 177 Pa. 183.

The deceased was not guilty of contributory negligence: Davidson v. Railway Co., 171 Pa. 522; McNeal v. Railway Co., 131 Pa. 184; Whitman v. Penna. R. Co., 156 Pa. 175; Ellis v. Lake Shore etc., R. R., 138 Pa. 506; Smith v. B. & O. R. R., 158 Pa. 82; Link v. Philadelphia & Reading R. R., 165 Pa. 75; Ely v. Ry. Co., 158 Pa. 233; Neiman v. D. & H. Canal Co., 149 Pa. 92; McGill v. Railway Co., 152 Pa. 331; Groner v. D. & H. Canal Co., 153 Pa. 390.

*J. W. Wetzel*, with him *Conrad Hambleton*, for appellees.— The court properly entered a nonsuit: Davidson v. Ry. Co., 171 Pa. 522; Sullivan v. R. R., 175 Pa. 361; Penna. R. Co. v. Beale, 73 Pa. 509; Gangawer v. R. R., 168 Pa. 269; Ely v. Ry., 158 Pa. 236; Weiss v. R. R., 79 Pa. 387; O'Brien v. R. R., 3 Phila. 76.

PER CURIAM, May 24, 1897:

We are not convinced that there is any error in this record.

The judgment denying the motion to take off the nonsuit is affirmed on the opinion of the learned president of the common pleas.