Jacob Hartman, Appellant, *v.* Joseph S. Harris, Edward M. Paxson and John Lowber Welsh, Receivers of the Philadelphia & Reading Railroad Company.

[Marked to be reported.]

*Negligence—Railroads—Crossings—" Stop, look and listen."*

In an action against a railroad company to recover damages for personal injuries suffered at a grade crossing, a nonsuit is properly entered for contributory negligence where the evidence of the plaintiff shows that he stopped at a point thirty-five feet from the track, and looked both ways; that he then proceeded on a walk, looking in the direction in which he expected to see a train which was about due, and went directly upon the track without again stopping or looking, and was struck by a train coming from the opposite direction, which he could have seen at the point where he stopped, and at any point from that to the track, for a distance of eight hundred and fifty-five feet.

Argued April 26, 1897. Appeal, No. 487, Jan. T., 1896, by plaintiff, from judgment of C. P. Cumberland Co., entering nonsuit. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ. Affirmed.

Trespass for personal injuries.
The facts appear by the opinion of the Supreme Court.

*Error assigned* was refusal to take off nonsuit.

*F. E. Beltzhoover*, with him *J. W. Eckels*, for appellant.— Negligence consists in the absence of that ordinary care which a party ought to observe under the particular circumstances in which he is placed. A different degree of care is required where there is reason to apprehend danger, from that which is necessary where none is expected: R. R. v. Ogier, 35 Pa. 60; R. R. v. Coon, 111 Pa. 430; R. R. v. Peters, 116 Pa. 206; Arnold v. R. R., 115 Pa. 135; McWilliams v. Keim, 22 W. N. C. 372; Ellis v. R. R., 138 Pa. 506; McGill v. Ry., 152 Pa. 331; Newhard v. R. R., 153 Pa. 417; Ely v. Ry., 158 Pa. 233; Hoffmeister v. R. R., 160 Pa. 568; Davidson v. Ry., 179 Pa. 229; Sullivan v. R. R., 175 Pa. 362; Philpott v. R. R., 175 Pa. 570; Roberts v. Del. & Hudson Canal Co., 177 Pa. 183; Cookson v.

Ry., 179 Pa. 184; R. R. v. Hefferan, 57 N. J. L. 149; Winey v. Ry., 61 N. W. Rep. 218.

*J. W. Wetzel*, for appellee.—When the facts are simple and the evidence by which they are presented is involved in no uncertainty their legal value is for the court to determine; but when the evidence is conflicting, or the facts are left in doubt, the conclusions are for the jury: Davidson v. Ry., 171 Pa. 522; Gray v. R. R., 172 Pa. 383; Seamans v. R. R., 174 Pa. 421; Sullivan v. R. R., 175 Pa. 361.

OPINION BY MR. JUSTICE GREEN, July 15, 1897:

This case was nonsuited in the court below on the ground of the plaintiff's contributory negligence. If that ruling was proper under the evidence the judgment should be affirmed, otherwise it should be reversed. The plaintiff approached the track on the morning of October 9, 1895, between seven and eight o'clock. According to his own testimony he reached a point 35 feet distant from the track, and there stopped and looked both ways and listened for an approaching train which he knew to be due there at about 8 A. M. He did not see or hear any train or engine approaching. He had traveled the road very frequently, and was well acquainted with the schedule time of the next regular train. The train he was expecting approached from the east, and its schedule time was 8:10. He drove his horse on a walk from the point 35 feet distant and, without stopping again, he went on the track, and was immediately struck by a locomotive coming from the west, with tender in front and caboose behind. He said he heard the danger signal whistle at the cattle chute, which was 186 feet distant, and upon turning to look, the train was on him. It is manifest that the question of his contributory negligence turns upon his actions at and after leaving the point 35 feet distant, and also upon the physical situation along that distance. He had thrown back both of the side doors of his wagon at a point 300 feet distant, and kept them open so that he could easily see and hear in either direction along the track from his wagon. At a point 35 feet distant from the track there was a sign-board set up with the words "Railroad Crossing" on it. The plaintiff was asked: "Q. When you were at the point 35 feet from the

railroad track how far could you see west? A. Down to below the station. Q. You mean west of the station? A. Yes, sir. Q. How far could you see west of the station? A. Well we can see down to where the next curve starts, about 855 feet. Q. At a point 35 feet from the railroad track you could see 855 feet, according to your engineer's measurements? A. Yes, sir. . . . Q. Then we understand you that from any point 35 feet north of the track until you reached the track, if you had looked, you could have seen an approaching train as far as the station west? A. Yes, sir; as far as the station." The plaintiff's engineer testified that it was 855 feet from the road crossing where the accident occurred to the point at which the curve commenced. This being the physical situation the plaintiff was asked: " Q. Did you look up and down after you left that 35 foot point? A. As I drove I was looking and listening all the while. Q. Looking both ways? A. I was looking for that passenger train. Q. Did you look westward after you left the 35 foot point? A. I suppose one time after I first stopped I was looking that way and then my attention was drawn the other way on account of that passenger train coming in. . . . Q. Do you know now whether you looked westward at any time after you left the 35 foot point? A. When I started to go I was looking westward; then my attention was drawn the other way on account of the approaching train from the other side. Q. Was there a train approaching from the other side? A. The time was in my mind that a passenger train was about due; I knew it was near eight o'clock or just eight."

The plaintiff's account of the accident was given thus in his testimony: " I was looking down towards Harrisburg and just as my horse got right on the track he made a spring; I grabbed up the lines as well as I could and took a better grip and, at the same time, I looked out towards my right, and to my astonishment there was an engine with the tender in front coming towards me at a furious rate of speed, and in less time—or in about two seconds, I would suppose—because I don't know whether I drawed my breath once or twice—and in less than no time—of course the whistle was sounded right at the cattle chute. Q. What sort of a whistle? A. A kind of a toot, toot, a shrill whistle. Of course that made the horse all the worse. I seen the condition I was in and had not a moment's time to

realize what to do or where to go when I was struck, in about, from the time I first seen the train and heard the whistle and until I was struck, in about two seconds or three seconds. Q. How far away were you from the railroad track when you heard the danger signal? A. Right on the track. Q. Did your horse stop on the track? A. It jumped down the track. . . . Q. You say you were driving your horse on a walk from 35 feet until you reached the track? A. Yes, sir."

It is perfectly manifest from the foregoing testimony that when the plaintiff left the point 35 feet distant he never once looked in the direction from which the engine was approaching; that he was going on a walk only; that he went directly upon the track without again stopping or looking, and was immediately struck. He could see in that direction a distance of 855 feet, but because he did not look he did not see. He says, what was no doubt the fact, that he was looking in the opposite direction for a train that he was expecting, but which was not yet due, and he admits that it was this that diverted his attention to that side. As a matter of course it was very unfortunate that he omitted to look in the opposite direction, and it is perfectly obvious that if he had done so the accident would not have occurred. The case is extremely plain, and is readily disposed of by a consideration of the plaintiff's testimony only. The learned court below was clearly right in granting the nonsuit and in refusing to take it off. No other course was open without a clear disregard of the large number of cases which have thoroughly settled the law applicable in just such circumstances. The assignments of error are dismissed.

Judgment affirmed.