## Dominick Wojochoski *v.* Central Railroad Co. of New Jersey, Appellant.

*Province of court and jury—Contributory negligence—Stop, look and listen.*

In an action to recover damages for injuries received at a grade crossing, if the undisputed facts establish that the plaintiff did not stop at a proper place to look and listen, it is the duty of the court to declare the law adversely to the right to recover, but if the evidence is conflicting or the facts are left in doubt, the conclusions are to be drawn by the jury.

*Contributory negligence—Railroads—Grade crossing.*

If the evidence most favorable to the plaintiff established that he stopped at the place where he could not see and then drove on, passing a point, with which he was familiar from which he could have seen the track for a considerable distance, where reasonable prudence dictated that he should have stopped, looked and listened, and drove upon the track directly in front of a train, the question was one of law, and the court should have taken the case from the jury.

Argued Jan. 10, 1899. Appeal, No. 6, Jan. T., 1899, by defendant, from judgment of C. P. Luzerne Co., March T., 1894, No. 227, on verdict for plaintiff. Before RICE, P. J., BEAVER, ORLADY, SMITH, W. W. PORTER, W. D. PORTER and BEEBER, JJ. Reversed. Opinion by W. D. PORTER, J.

Trespass. Before WOODWARD, P. J.

It appears from the testimony that there was evidence of alleged negligence of the defendant company in failing to give warning of the approach of the train to a grade crossing sufficient to carry the case to the jury upon that question. Plaintiff's evidence established the fact that in approaching the railroad crossing he stopped at a place where he could not see and then drove on passing a point, with which he was familiar, from which he could have seen the track a considerable distance. In crossing the track plaintiff was struck by the approaching train and injuries resulted for which suit was brought. The court left the question of defendant's liability to the jury refusing a request for binding instructions in favor of defendant.

Verdict and judgment for plaintiff for $525. Defendant appealed.

*Error assigned* among others was refusal to charge the jury that "under all the evidence in the case the verdict must be for the defendant."

*Andrew H. McClintock* and *Henry W. Palmer*, for appellant. —It is a rule that one approaching a railroad crossing upon a public highway must stop, look and listen at a convenient distance from the track before venturing upon it. Failure to do this is negligence which will prevent a recovery: Myers v. Railroad Co., 150 Pa. 386.

Cited further on the question of contributory negligence: Marland v. Railroad Co., 123 Pa. 487; Derk v. Railroad Co., 164 Pa. 243; Plummer v. Railroad Co., 168 Pa. 62; Gleim v. Receivers, 181 Pa. 387; Hartman v. Receivers, 182 Pa. 172; Sullivan v. Railroad Co., 175 Pa. 361; Seamans v. Railroad Co., 174 Pa. 421.

*John M. Garman*, with him *T. D. Garman*, for appellee.—If the plaintiff's evidence leaves the fact in doubt, the evidence of

contributory negligence on both sides is for the jury: Beach on Contributory Negligence (2d ed.), 432, 449.

In actions to recover damages for death or injuries at graded crossings where the facts are simple, and the evidence by which they are presented is involved in no uncertainty, their legal value is for the court to determine, but where the evidence is conflicting or the facts are left in doubt, the conclusions are to be drawn by the jury: Davidson v. Railway Co., 171 Pa. 522.

The cases quoted by the appellant's counsel are undoubtedly the law on the facts of those respective cases, but they failed to note that there was quite a distinction: Myers v. Railroad Co., 150 Pa. 386.

The whole line of decisions quoted by appellants simply demonstrates that each case is a law unto itself and that the principle quoted heretofore from Davidson v. Railway Co., supra, is the principle that must be applied. And we feel perfectly safe in submitting this case to the court upon the evidence, satisfied that by applying that principle, it will find that the facts are involved in uncertainty, are left in doubt, and that the conclusions should be for the jury.

In Ellis v. Railroad Co., 138 Pa. 506, Chief Justice Paxson said: "The question whether a traveler in a given case has stopped at the best place is necessarily a question of fact, not of law. If I am right in this it must as a general rule be passed upon by a jury:" Whitman v. Railroad Co., 156 Pa. 175.

Opinion by W. D. Porter, J., July 28, 1899:

This record presents but a single question under the assignments of error; whether, under all the evidence, the court below should have affirmed the request for binding instructions presented by defendant. The evidence as to the alleged negligence of the servants of the defendant company, in failing to give warning of the approach of the train to the grade crossing, was such as to carry the case to the jury upon that question.

The only question, therefore, now presented for consideration is whether the undisputed facts presented such a case as to require the court to determine, as matter of law, that the conduct of plaintiff involved contributory negligence, which must pre-

vent a recovery. The plaintiff testified that he stopped, looked and listened at a point somewhat distant from the track, before attempting to pass over the grade crossing at which he was injured, and this further narrows the present inquiry to the single question, Did the plaintiff stop at a proper place to ascertain if a train was approaching?

The general rules by which the conduct of persons passing over railroad tracks is to be governed are too well settled to require discussion. Whether such persons have come up to the measure of care required is sometimes a question free from doubt as to the facts, and is to be determined as a question of law, but when the facts are in dispute, or the inferences to be drawn from them are not clear, it becomes a question for the jury. In an action to recover damages for injuries received at a grade crossing, if the undisputed facts establish that the plaintiff did not stop at a proper place to look and listen, it is the duty of the court to declare the law adversely to the right to recover, but if the evidence is conflicting, or the facts are left in doubt, the conclusions are to be drawn by the jury: The Central R. R. Co. of N. J. v. Feller, 84 Pa. 226; Urias v. Pennsylvania R. R., 152 Pa. 326; McGill v. Pittsburg & Western Ry., 152 Pa. 331; Whitman v. Pennsylvania R. R., 156 Pa. 175; Davidson v. Lake Shore R. R., 171 Pa. 522. The fact that there is a conflict of evidence upon some other question in the case is not pertinent to the inquiry; the dispute must be as to facts which are material to the question of plaintiff's negligence. If the plaintiff's evidence establishes his own negligence and the evidence produced by defendant simply tends to make that negligence more clearly apparent, that is not such a dispute as to facts as will justify the court in submitting the question to the jury.

In the present case, the plaintiff testified that he did stop at a point distant from the crossing, and witnesses on behalf of defendant testified that the plaintiff did not stop at any place. Here was a dispute as to the facts; but if the evidence most favorable to plaintiff established that he stopped at a place where he could not see and then drove on, passing a point, with which he was familiar, from which he could have seen the track for a considerable distance, where reasonable prudence dictated that he should have stopped, looked and lis-

tened, and drove on to the track directly in front of a train, the question was one of law. The evidence on behalf of plaintiff established the following facts : The accident occurred at a point where the public road crosses the Wanamie branch of the railroad, from which the public road, going north, ran up a grade to the end of a bridge forty-nine feet distant from the track ; this bridge was seventy-six feet long and carried the public road over the track of the Nanticoke or Lee Mine branch of the railroad, and from the northerly end of the bridge the public road continued in a northeasterly direction towards Wilkes-Barre. Along the north side of the Nanticoke branch there were trees and bushes which interfered with the view of the track of the Wanamie branch from the road north of the bridge. From any point on the bridge the track of the Wanamie branch, from the crossing easterly to where two apple trees and some bushes stood, was plainly visible, except where the view was interrupted by a small tool house, twelve by sixteen feet in size, which stood sixteen feet from the track. The plaintiff estimated the distance from the crossing to the tool house at 150 feet, and the length of track which could be seen between the tool house and the apple trees at 100 feet, more or less. The only witness called by plaintiff who had made any measurements upon the ground gives the distance from the crossing to where the apple trees stood as 620 feet. The bridge was wide enough for two teams to pass and had railings along its side. No fact was testified to which indicated that it was not perfectly safe to stop on this bridge. As to the grade of the road and the nature of the surroundings between the southerly end of the bridge and the railroad crossing, there is a conflict of evidence, and, as there is a doubt about there being a safe place to stop on that part of the road, it may be eliminated from the consideration of the present question.

The plaintiff, who was perfectly familiar with the premises, was, in the daytime, driving along this public road, in a closely covered wagon, with a glass front, a glass window in the forward end of each side and one in the back. He testifies that, as he approached the crossing, coming from the direction of Wilkes-Barre, he stopped at a point ten or twelve yards north of the northerly end of the bridge and looked and listened for approaching trains ; hearing nothing he sat back, where he could

see out only directly in front, and drove ahead over the bridge, without again looking or listening, and from the bridge down on to the crossing. As his horses were on the track he noticed a man standing near gesticulating to him; he then looked out and found that the cars were upon him. He pulled the horses around to one side, the car struck and broke the wagon, threw the plaintiff out and injured the horses. The plaintiff's testimony places the point at which he stopped at 155 feet from the track, or thirty feet beyond the bridge, and describes the surroundings of that point and the opportunities for observation as follows: "Everything was bushes on both sides, narrow road at that place and everything was covered with trees from both sides, could see nothing; and I came below the bridge and stopped there." "And I stood on this side of the bridge." "I looked that there was a place to one side to see up a little." "Q. How much of the railroad track could you see when you stopped before you crossed the bridge? A. Could see about 100 feet; that is all I could see. Q. Whereabouts was this? A. Towards Wilkes-Barre, in that direction. Q. Do you mean above or below the tool house? A. Yes, sir; above the tool house. Q. How far did these trees extend along the Naticoke railroad, I mean towards Hanover? A. It was growed up right close to the railroad from the bridge up to Hanover. Q. What effect had these trees, if any, upon your view of the railroad? A. Could not see nowheres except in one little spot you could see a few yards." It thus clearly appears that, if plaintiff did stop, look and listen, it was at a point where he could not see, and that he then drove on, closely shut up in his box-like wagon, without again stopping to look or listen, passing the bridge, from which he could have safely had a view of over 600 feet of the track over which the train was coming, and drove directly in front of the train. The train, which came from the east, must have been plainly visible at the time plaintiff was crossing the bridge. It was a very long train and was pushing a large number of cars ahead of the engine; that it was moving slowly is established beyond doubt. The plaintiff says it was moving rapidly, but he did not see it until he was directly in front of it, and then only for a fraction of a second. Two witnesses for the plaintiff say it was moving at about the rate used in operating electric cars in the streets of the city of

Wilkes-Barre; these were the only witnesses for plaintiff who testified as to the rate at which the train was moving, and both say that they saw the plaintiff while he was upon the bridge, that he was driving at a trot, and that he and the train were about the same distance from the crossing. It is, therefore, evident that the plaintiff and the train were both moving at about the same rate of speed.

The contributory negligence of plaintiff was established beyond doubt by the evidence which he himself produced, that conclusion was not negatived by the evidence offered by the defendant company, and it was, therefore, incumbent upon the court to affirm the request of the defendant for binding instructions : R. R. Co. v. Feller, supra; Urias v. Pennsylvania R. R., supra; Davidson v. Lake Shore R. R., supra; Gleim v. Harris, 181 Pa. 387; Hartman v. Receivers, 182 Pa. 172.

The first specification of error is sustained.

Judgment reversed.