# Borofsky *v.* West Jersey & Seashore R. R. Co., Appellant.

*Negligence — Railroads — Collision between train and wagon — "Stop, look and listen."*

Where a wagon is driven over a highway at a place where the road crosses two parallel single track railroads, with a space between the two railroads sufficient to permit the wagon to be stopped with safety, and the wagon is struck by a train while crossing the tracks of the second railroad, no damages can be recovered for the injuries sustained, where it appears that the driver stopped before

crossing the first track and looked and listened and then drove at a trot over the first track and the intervening space and on to the second track without further stopping, and that there was a safe place to stop in the intervening space, from which a clear view of the track under existing atmospheric conditions could have been had for about a mile in the direction from. which the train came.

Argued Dec. 10, 1915.    Appeal, No. 239, Oct. T., 1915, by defendant, from judgment of C. P. No. 1, Philadelphia Co., Sept. T., 1912, No. 3896, on verdict for plaintiff in case of Morris Borofsky, by his father and next friend, Samuel Borofsky and Samuel Borofsky v. West Jersey & Seashore Railroad Company.    Before RICE, P. J., ORLADY, HEAD, PORTER, HENDERSON, KEPHART and TREXLER, JJ.    Reversed.

Trespass to recover damages for injuries to a horse and wagon.    Before PATTERSON, J.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for Samuel Borofsky for $500. Defendant appealed.

*Error assigned* was in refusing binding instructions for defendant, and in refusing judgment for defendant n. o. v.

*Sharswood Brinton,* for appellant.—Under the rule of law that where the testimony of a witness is purely conjectural as against that of a witness testifying from records, or where the testimony of a witness is positively contradicted by physical facts, neither the court nor the jury should be permitted to credit the testimony of such a witness: Knox v. P. & R. Ry. Co., 202 Pa. 504; American Car & Foundry Co. v. Kinderman, 216 Fed. 499; Keiser v. L. V. R. R. Co., 212 Pa. 409.

It is the appellant's contention that as a matter of law it was the duty of the occupants of the wagon to have stopped before crossing the defendant's track, notwith-

standing the earlier stopping before crossing the Jersey Central track: Walsh v. P. R. R. Co., 222 Pa. 162; Gangawer v. P. & R. R. Co., 168 Pa. 265; Harvey v. Erie R. R. Co., 210 Pa. 95; Canfield v. B. & O. R. R. Co., 208 Pa. 372.

To relieve a person from the duty of seeing a train at a crossing, some affirmative evidence must be offered showing that the vision was obstructed. A jury cannot be permitted to infer this or to guess at it: Blight v. Camden, Etc., R. R. Co., 143 Pa. 10.

Where a person is struck by a moving train plainly visible from the point occupied when the duty to stop, look and listen arises, a conclusive presumption of having gone into obvious danger bars a recovery: Evans v. Pennsylvania Co., 226 Pa. 370; Myers v. B. & O. R. R. Co., 150 Pa. 386.

*Henry J. Scott*, for appellee, cited: Ellis v. Lake Shore, Etc., R. R. Co., 138 Pa. 506; Masso v. Pittsburgh & L. E. R. R. Co., 243 Pa. 1.

OPINION BY PORTER, J., March 7, 1917:

This action of trespass was brought by Morris Borofsky, by his father and next friend Samuel Borofsky, and Samuel Borofsky, in his own right, to recover damages for a grade crossing accident, alleged to have been caused by the negligence of the defendant. The trial in the court below resulted in a verdict in favor of the defendant as to Morris Borofsky, the son, and a verdict in favor of plaintiff as to Samuel Borofsky, the father, presumably for damages to the horse and wagon, of which he was the owner. Judgment having been entered on the verdict in favor of Samuel Borofsky, the defendant appeals.

The accident out of which the action grew occurred on February 20, 1911, at 9 : 30 o'clock in the morning, at the grade crossing of Rosenhayn avenue, near Bridgeton, in the State of New Jersey. Morris Borofsky and his

mother, Rebecca, approached the crossing in a wagon drawn by one horse, the mother driving. The road first crossed the single track railroad of the Central Railroad of New Jersey and a short distance farther on crossed the single track railroad of the defendant company. The tracks of the railroads were some distance apart, but as to the exact distance there was a conflict of evidence. The only specification of error being that the court below erred in refusing to enter judgment in favor of the defendant non obstante veredicto, we must accept the testimony of the plaintiff, as to the distance between the tracks, as true. Morris Borofsky testified that there was a space of five or six yards between the tracks of the respective railroad companies, and that each of the railroads had but a single track. He also testified, however, that there was enough space between the tracks to permit the horse and wagon to stand and that: "If I would see any train coming, I could have,......my mother could have turned the horse to one side, because the horse was a quiet horse, and he was not afraid of anything." The evidence produced by the defendant, by an engineer who had actually made measurements upon the ground, was that the distance between the tracks was one hundred and ten feet.

Upon reaching a point five feet from the track of the Central Railroad of New Jersey, Mrs. Borofsky stopped the horse and the son, Morris, got out of the wagon, about which time a passenger train going south on the West Jersey & Seashore track, ran over the crossing; Morris then walked over the track of the Central Railroad of New Jersey and across the intervening space to the track of the West Jersey & Seashore Railroad and looked both north and south for approaching trains. Seeing none, he went back, got into the wagon and told his mother to drive on. The horse was started at a trot and continued to trot until they had crossed the track of the Central Railroad, the space between the railroads, and had almost crossed the track of the defendant company

when the hind part of the wagon was struck by a loco-
motive, which had no cars attached, which was proceed-
ing southward, the same direction in which the passenger
train had gone.  The wagon in which the parties were
riding had curtains at the side, but there were small
glass windows in the curtains through which they might
observe approaching trains.  The accident occurred in
broad daylight.  Morris Borofsky and his mother each
testified, it is true, that it was snowing, but neither of
them testified that that interfered with their vision in
any respect.  The son testified that it was snowing "just
a little bit," and he further testified that after passing
over the track of the Central Railroad there was nothing
at all to obstruct the view of the West Jersey track, that
you could see it for a mile "right down there," in the di-
rection from which this engine came.  The mother testi-
fied that as you approached the track of the West Jersey
& Seashore Railroad there was nothing at all to obstruct
your view of that track, that you could see right down the
track a long distance, in the direction from which the
engine came.  Morris testified that while his mother was
driving across the first track, that of the Central Rail-
road, he was looking both ways, north and south, for ap-
proaching trains and that he looked just as the horse was
going across the West Jersey track and that he did not
see the engine which struck the rear end of the wagon
before it had cleared the track.  He testified that no bell
was sounded nor whistle blown and the absence of such
signals is the only evidence tending to establish negli-
gence on the part of the defendant company.  There was
no suggestion that the engine had approached the cross-
ing at a high rate of speed and the testimony of Morris
negatived any idea of such a thing, for he testified that
the engine came to a stop about twenty-five feet after it
struck the wagon.

The defendant produced evidence which, as to the dis-
tance at which a train approaching the crossing would
be visible, was entirely in harmony with that of the wit-

nesses for the plaintiff, and established the following facts: From the crossing the track of the defendant railroad is visible for a distance of 4,940 feet; at thirty feet from the railroad it can be seen for 3,000 feet; and at any point between fifty and one hundred and thirty-five feet from the track it can be seen for a distance of 2,800 feet. It thus appears that the view of the track becomes more extended as one approaches it from a point five feet beyond the track of the Central Railroad of New Jersey. The defendant also produced evidence which contradicted that produced by the plaintiff as to whether a bell was rung to give warning of the approach of the engine to the crossing. The engineer and the fireman who operated the engine testified that the bell upon the engine had been rung continuously from a point over half a mile distant from the crossing. The fireman testified that he saw the wagon of the plaintiff approaching the crossing when the engine was five hundred feet away, that when he first saw the horse it was trotting, that it seemed to slack up and he thought they were going to stop, but the horse started up again when the engine was two hundred feet from the crossing and he then called to the engineer who immediately applied the emergency brake. This testimony was corroborated by the engineer, who testified that it required a distance of about three hundred feet to stop the engine, which had been running at a rate of eighteen or twenty miles an hour, and that the engine ran about two lengths of itself after striking the wagon. This would put the rear end of the engine about fifty feet beyond the point of the collision, or slightly farther than young Borofsky had testified. The fact that the fireman saw this horse and wagon before the latter had reached the point of danger and when it might have been stopped and avoided the accident is conclusively established, not merely by his testimony but by the physical fact that the locomotive was stopped within a very short distance after it had struck the wagon. Why did not those in the wagon see the locomotive?

The duty to be watchful and careful in crossing the track of a railroad does not cease with the mere act of stopping, looking and listening at some point at a safe distance from the track, but continues so long thereafter as danger is reasonably to be apprehended which by proper care can be avoided. "One may not determine for himself that point of observation, and because there he neither sees nor hears warning, advances heedlessly upon the tracks of the railroad, without incurring responsibility for any disaster that may ensue. The duty to be observant continues so long as danger threatens. If between the point where the party stops, and the tracks of a railroad, the situation affords opportunity to discover an approaching train, and injury results because of disregard of such opportunity, the original act of stopping cannot operate to relieve the injured party of contributory negligence": Walsh v. Pennsylvania R. R. Co., 222 Pa. 162. In the present case the evidence of the plaintiff established that there was a safe place to stop this team after passing the track of the Central Railroad of New Jersey before entering upon the track of the defendant company, and that from that place a clear view of the track could have been had for almost a mile. Now, whether it was the duty of those in charge of the plaintiff's team to make a second stop or not, it is not in this case necessary to determine, it was unquestionably their duty to proceed with care and to keep a constant lookout for approaching trains until the point of danger had been passed. Notwithstanding the testimony of one of the plaintiffs in this case that he continued to look as he advanced, and failed to see the approaching locomotive, and although he may honestly believe that he did so, his statement that he did not see the locomotive which must have been within a few feet of him, is simply incredible. Had he looked at any time after passing the Jersey Central track he must have seen the approaching locomotive on the track of the defendant company. The evidence admits of no other conclusion than that those in charge of

the team either saw the locomotive and thought they had an opportunity to get across and ventured; or, that, with the locomotive in full sight and with every opportunity to see, if they had looked, they did not look. The present case is ruled by that above cited, to which may be added Gleim v. Harris et al., 181 Pa. 387; Born v. Philadelphia & Reading Railroad Co., 198 Pa. 409; Canfield v. Baltimore & Ohio R. R. Co., 208 Pa. 372; Harvey v. Pennsylvania R. R. Co., 210 Pa. 95. The contributory negligence of those in charge of the team was so apparent that it became the duty of the court, under the admitted facts, to give binding instructions for the defendant. The specification of error is sustained.

The judgment is reversed and the record is remitted to the court below with direction to enter judgment in favor of the defendant non obstante veredicto.