## Kerr *v.* Philadelphia Rapid Transit Co., Appellant.

*Negligence — Street railways — Right angled collision between car and team—Contributory negligence.*

Where an omnibus twenty-five feet long and drawn by six horses geared in three pairs, one ahead of the other, approaches the crossing of an electric railway at an intersection, under the conduct of a driver and an assistant driver, and the view of the drivers is so obstructed by buildings, that their view along the tracks is but eighteen feet when the heads of the front horses are very near the tracks, it is the duty of the driver to stop and direct his assistant to go forward and see whether the crossing is safe, and if he fails to do so, and the front horses are struck and injured, his employer cannot recover for the injuries sustained.

Argued Oct. 17, 1917. Appeal, No. 296, Oct. T., 1917, by defendant, from judgment of Municipal Court, Philadelphia Co., March T., 1915, No. 676, on verdict for plaintiff in case of David A. Kerr et al. v. Philadelphia Rapid Transit Company. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ. Reversed.

Trespass to recover damages for injuries to horses. Before CRANE, J.

The circumstances relating to the accident are set forth in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $200. Defendant appealed.

*Error assigned* was in overruling defendant's motion for judgment n. o. v.

*Harold B. Beitler,* for appellant.

*Lambert Ott, Jr.,* with him *Joseph W. Catharine,* for appellee.

OPINION BY ORLADY, P. J., March 2, 1918:

The plaintiffs' omnibus, twenty-five feet long, drawn by six black horses geared in three pairs, one ahead of the other, was being driven west on Queen street about ten p. m. on July 5, 1914. When the driver entered upon the defendant's track on Fourth street, a street car collided with the team and certain injuries resulted. This crossing is in a thickly populated section of Philadelphia. The plaintiffs' witnesses contended that the "car was running at an awful rate of speed, like a flash of lightning,"—"as the car hit the horse the motorman walked back from the controller, he was afraid of getting hit by the crash of the glass in the front," and "that the car ran the length of itself or somewhere around seventy-five feet before it was stopped,"—"faster than cars are run along the streets,"—"that no bell was rung" and that "it did not slow down at the crossing."

On the other hand it is urged that, the contributory negligence of the plaintiffs' driver depends on the admitted facts under which he occupied the tracks of the defendant company. The testimony clearly shows that he was familiar with the crossing and its surroundings; he was driving an unwieldly team, hauling an omnibus of unusual length; he had with him an assistant who was subject to his orders; the crossing was liable to be used at any moment by a street car; his view was obstructed by buildings, so that his first look in either direction would be when the front of the bus passed the house line, and at this point he could see but eighteen or nineteen feet on Fourth street. Queen street has a driveway twenty-six feet wide, the sidewalks are twelve feet each, it is paved with Belgium blocks and is without car tracks. Fourth street, which he crossed, has a driveway twenty-six feet wide with sidewalks twelve feet each, and a car track in the middle of the street, so that from the building line to the car track, there was the sidewalk of twelve feet and the space between the curb and car tracks, approximately ten feet; the horses' heads, neces-

sarily, from these measurements would be quite near to
the car track before the driver could have any view of an
approaching car, as the team would occupy nearly the
whole of the distance between the building line and the
car track.

The assistant driver testified that he could see north
on Fourth street thirty-four or thirty-five feet.   With
these admitted facts, it was the duty of the driver to stop
his team, and send his assistant forward to see whether
the track could be safely used by this unwieldy team and
bus.   Their testimony is, that they did look and heard no
signal, and without stopping entered upon the track and
the front horses were struck at the collar, so that, irre-
spective of the negligence of the defendant company, we
must hold under our decisions, that the plaintiffs' driver
did not exercise care commensurate with the dangers of
the situation: King v. Pittsburgh, Etc., Ry. 242 Pa. 497.
Notwithstanding the testimony of the driver and his
assistant, that they continued to look as they advanced
to the track and failed to hear or see the approaching
car, it conclusively appears that they did not stop at all,
and, looked at a place where they could see but a very
short distance, at most forty-five feet, up Fourth street,
and this when they were bound to anticipate the ap-
proach of a car at any moment; and further, the testi-
mony shows that when the front horses entered upon
the car track the collision immediately followed.   The
contributory negligence of those in charge of the team
was so apparent that it became the duty of the court
under the admitted facts, to give binding instructions for
the defendant: Borofsky v. West Jersey & Seashore R. R.
Co., 65 Pa. Superior Ct. 389.   The jury would not be war-
ranted in inferring that one of the drivers could not have
seen the approaching car if he had been at the head of
the team, as this position would have given a much
longer view up Fourth street, and no reason is suggested
why this added precaution was not taken.   We do not
hold that it is the duty of a driver to stop his team at

some distance from the crossing and go forward, to look along the track for an approaching car; in some instances this might be considered an act of reckless folly, and increase the risk of a collision by leaving the team unattended, but in the case before us the assistant could have safely discharged this duty, while the driver with the reins remained at his station, and thus avoid the accident. When a clear view of the track cannot be had from a safe distance, it may be the duty of the driver to stop before crossing the track of a street railway and make a reasonable examination of the crossing and its surroundings. While this is not a fixed duty, as it is in the case of a steam railroad, and unless the necessity for this additional timely care is obvious, the question whether under the circumstances this precaution should have been taken is for the jury, is the rule as laid down in Haas v. Chester St. Ry., 202 Pa. 145, but in the case before us the buildings on the street corners so obstructed the driver's view that looking for the short distance of forty feet along Fourth street, was futile as a safety preventive measure. See also Omslær v. Pittsburgh, Etc., Traction Co., 168 Pa. 519; Burke v. Union Traction Co., 198 Pa. 497; Timler v. P. R. T. Co., 214 Pa. 475; Ervay v. Waverly, Etc., Traction Co., 240 Pa. 440; Weber v. P. R. T. Co., 256 Pa. 595. Under the undisputed facts the defendant's point "under all the evidence the verdict should be for the defendant" should have been affirmed, and binding instructions given to find for the defendant.

The judgment is reversed.