## No. 7678.

SARAH E. VANCE ET AL. VS. SARAH E. VANCE, EXECUTRIX.   G. W. SENTELL & CO., INTERVENORS.

From the moment of his second marriage, the natural tutor owes to his minor children the rents and revenues accruing on their share of the community property held and administered by him. If the tutor has mingled the minor's property with his own and used it in his own interest, he is responsible for the rent, or hire of the property during his possession, and five per cent per annum interest on each year's amount of such rent or hire.

The tutor is liable for the money of the minors received by him and legal interest from the day of its receipt, but not for compound interest.

This court cannot amend a judgment, as between the appellees.

The judgment against a succession cannot be amended by this court so as to increase its amount, except contradictorily with the legal representative of the succession.

Article 123 of the constitution of this State invalidating as to third persons, after January 1st, 1870, all mortgages not recorded, is not in conflict with article 10 of the Constitution of the United States which forbids the passage of any law impairing the obligation of contracts.

APPEAL from the Parish Court of Bossier.   *Fort,* J.

 *T. T. & A. D. Land* for plaintiff and appellee.

 *J. A. Snider* for succession of Vance.

 *J. D. Watkins* and *Looney & Elstner* for intervenors, appellants.

---

 T. T. & A. D. Land, for plaintiffs, contended :

First—We therefore affirm the true legal doctrine to be, that a tutor has no right, power, or authority to retain the movable effects and to cultivate a plantation, the property of his ward, without the advice of a family meeting and the authorization of the judge.   This is the only doctrine that will carry out the spirit and policy of the law for the protection and preservation of the property and the revenues of minors.   It was so held in the case of Boisseau & Ford vs. William Marks, Tutor, decided in 1875, but not reported.   And if the tutor fails to do this, he will be responsible for whatever he could have rented or hired the minor's property for.   C. C. 327, 328, etc.; 3 A. 611.

Second—That the legal tacit mortgage in favor of minors which existed prior to the constitution of 1868 was not affected by a failure to record it before January 1st, 1870.   That article 123 of that constitution requiring such recordation divested vested rights, impaired the obligation of contracts, and thc refore was in conflict with article 10 of the Constitution of the United States.   6 N. S. 585 ; 3 L. 337 ; 4 L. 407 ; do. 94 ; 8 Wheaton, 1.

Third—Homologated accounts of a tutor are merely provisional.   They are not conclusive against the minor.   C. C. 356 ; 13 A. 464 ; 29 A. 722.

Fourth—A tutor cannot expend more than or contract debts exceeding the minor's revenues, without judicial sanction.   See 28 A. 898 ; 14 A. 760 ; 12 A. 674 ; 11 A. 667 ; 4 A. 88 ; 3 A. 325 ; Civil Code, art. 350.

Fifth—The tutor cannot claim commission on the gross revenues of the minor.   See 9 A. 505; 12 A. 334; 1 Hennen's Digest, page 921, No. 9.

Sixth—The tutor owes legal interest on the revenues of the minor which he fails to invest, when they exceed five hundred dollars.   See C. C. art. 347 ; 3 A. 611 ; 5 A. 189 ; 5 A. 214 ; 4 A. 214 ; 14 A. 764 ; 11 A. 523 ; 10 A. 288 ; 4 R. 290.

Seventh—The tutor cannot encroach upon the capital to pay expenses, exceeding the minor's revenues, without judicial sanction. See C. C. art. 350.

J. D. Watkins, for intervenors, contended :

First—That the demand by the former ward of a tutor for the proceeds of the crops produced by the tutor on the plantation of the ward estops the latter from urging that the tutor was without authority to buy supplies and hire labor to make the crops.

Second—That article 123 of the constitution of this State is not in con- flict with the Constitution of the United States. 20 A. 533 ; 26 A. 584 ; 11 Peters, 420, 539 ; 1 Baldwin, 69 ; 8 Howard, 163 ; 1 Howard, 315 ; 1 McAll, 513 ; 9 Howard, 407 ; 13 Peters, 312 ; 22 A. 278 ; 24 A. 25.

Third—Homologated accounts of a tutor have the force of judgments, and can only be attacked by a direct action.

Fourth—When a constitutional provision has received a settled judicial construction, and is afterward incorporated into a new constitution, courts will feel bound to adhere to that construction. (1874 Exp. Roundtree ; 51 Ala. 42 ; 30 Mich. 201 ; 48 Ala. 540 ; 14 ; Fla. 587).

Fifth—Upon a question of doubt as to the constitutionality of a statute it is the duty of the courts to sustain the statute. 62 Ill. 268 ; 5 W. Va. 22 and 85 ; 44 Ia. 529 ; 41 Cal. 147 ; 66 Pa. 164.

The opinion of the court was delivered by

SPENCER, J.   This is a suit for settlement of a tutorship.   Mary E. Gilmer, wife of S. W. Vance, died October 15th, 1859, leaving two chil- dren, viz.: James B. G. Vance and plaintiff Sarah E. Vance, issue of her marriage with S. W. Vance, who was duly qualified as their natural tutor.   The deceased wife left a large separate estate, which was at her death inventoried at the sum of $106,776 07.   It consisted of planta- tions, slaves, mules, farming utensils, etc.   The community property between her and her husband was inventoried at $53,323 33, so that the estate of said minors amounted to $133,437 23.   S. W. Vance re- married in 1860, and thereby ceased to be usufructuary of the commu- nity property.   He died in 1877.   These minors also inherited considerable property and money from their grandfather, P. R. Gilmer, in the year 1861.

The property thus inherited from P. R. Gilmer, besides a large number of slaves, consisted of about $30,000 in stocks, bonds, and notes given by purchasers of the property of the estate.

They also inherited, about 1863, a considerable estate from their great uncle, George E. Gilmer.

The father and tutor took possession of all these estates, and seems to have administered them at his pleasure and without advice or authority of court, and in his own interest.

In 1864 James B. G. Vance died, being still in minority, leaving as his heirs his sister of the full-blood (plaintiff herein) and his father, S. W. Vance, and a brother and sister of the half-blood. His estate, to the extent of one half, devolved, therefore, to the plaintiff. In 1865 the lands, slaves, and movables owned in common by plaintiff and her deceased brother were partitioned between her and the other heirs of her said deceased brother. In this partition, besides a large amount of personal property, she received two plantations, the Buck-Hall and Plaindealing, with their slaves, etc. Being still a minor, plaintiff's property continued in the custody and control of her father up to her emancipation in January, 1877.

It is shown that at the death of plaintiff's mother there was on hand a large crop of cotton, which realized over $17,000, which sufficed to pay all community debt, leaving a balance over of $2757 92. It is shown that the tutor received large sums of money and notes from the estates of P. R. Gilmer and G. E. Gilmer. In addition, he received the entire fruits and revenues of the plantations and slaves of the minors from 1860 up to the liberation of the slaves in 1865. It is shown that from the crops grown during the years of the war S. W. Vance, the tutor, realized large sums of money, and had in gold and lawful currency at its close over $75,000, as the result of sales of said crops.

If we charge him for the rent and hire of this property from 1860 to 1865, the amount could not be fixed at less than six thousand per annum. It is shown that after the war, say from 1865 to 1877, the Buck-Hall plantation would have commanded a rental of from four to five thousand dollars per annum, and other lands of the minor a rental of six to eight hundred dollars per annum.

S. W. Vance, during his administration as tutor, rendered at times, after the war, what he called annual accounts. He rendered eight of them, resulting in a balance against the minor of some $5000. In other words, he not only absorbed the entire annual revenues of the large estates of the minors, but all of the large sums of money and other assets which came to his hands during a period of about seventeen years, and claims a debt of about $5000 in excess. These estates were wholly free from debt when he took them. They were large and very productive, and immense sums were realized by him out of their productions. He received from other sources large amounts for account of his wards. These facts utterly discredit his accounts, except so far as they show charges against himself.

The judge *a quo*, after what seems a patient and careful examination, rendered a judgment for plaintiff for something over $75,000.

We think that the facts in this record bear him out fully in this conclusion. Whether we adopt one or the other of the methods suggested for the calculation, the result will be reached. As the tutor mingled the administration of the minor's estates with his own, and manifestly cultivated and used them in his own interest, so that no fair statement of the matter can be made, the proper mode of calculation is to charge him with rent and hire of the lands, slaves, and movables, and to charge him at the end of each year with interest at five per cent on the amount of that year's rents; also to charge him up with the various sums received from other sources, and five per cent interest thereon per annum. This has been substantially the process adopted by the judge *a quo*. We think, however, that he should not have allowed or directed the compounding annually of the interest, as he has done in his judgment. We know no law that justifies such a judgment. The law requires the tutor to invest, under authority of the court, all amounts in his hands when, and as often as, they reach the sum of $500; but it does not say that in default he shall pay compound interest.

Plaintiff has filed in this court a prayer for the amendment of the judgment, by increasing its amount. But the position of parties before us precludes such action. The defendant, the executrix of the estate of S. W. Vance, has not appealed; nor did the plaintiff. They are both appellees, and it is well settled that this court cannot amend or reverse judgments as between appellees.

The intervenors are appellants, as are other creditors of the estate of Vance. We can, on their demand, reduce plaintiff's judgment against the estate of her tutor, but we cannot increase it, except contradictorily with the executor.

The only remaining issue is as to the existence and effect of the legal mortgage claimed by plaintiff on the real property of her tutor. The fact is that no registry of plaintiff's mortgage was ever made, as required by the 123d article of the constitution of 1868, and the legislation thereunder.

Intervenors, therefore, contend that her mortgage perempted and ceased to have effect as to them from and after the 1st January, 1870.

Plaintiff, to avoid this defense, alleges that article 123, aforesaid, so far as it applies to pre-existent legal mortgages, is in conflict with the 10th article of the Constitution of the United States, in this, that it impairs the obligation of contracts. The language of article 123, so far as pertinent is as follows: "The tacit mortgages and privileges now existing in this State shall cease to have effect against third persons after the

1st January, 1870, unless duly recorded. The General Assembly shall provide by law for the registration of all mortgages and privileges."

The Legislature did provide for such registry by act of 1869, p. 114. The argument is that the mortgage forms a part of the obligation of a contract, and that the State cannot, therefore, impair or abolish it. "Sabatier et al. vs. Their Creditors," 6 N. S. 585. Waiving the question (which is certainly a debatable one) whether or not the obligations and mortgages existing against the natural tutor in favor of his ward arise or spring from contracts, we think the plaintiff's argument untenable in that it assumes that the article 123 destroyed or impaired plaintiff's mortgage obligation, in the sense of the Constitution of the United States. Had that article simply declared the abolition and extinction *eo instanti* of all tacit mortgages, there would have been the case presented by plaintiff's argument. But it did nothing of the sort. It fixed a future day, reasonably distant, and declared that such mortgages would perempt, prescribe, or cease to exist as to third persons, unless recorded by that date. It is in its nature a statute of limitations. The right of the State to prescribe the time within which existing rights shall be prosecuted, and the means by, and conditions on, which they may be continued in force, is, we think, undoubted. Otherwise, where no term of prescription exists at the inception of a contract, it would continue in perpetuity, and all laws fixing a limitation upon it would be abortive. Now, it is elementary that the State may establish, alter, lengthen, or shorten the period of prescription of existing rights, provided that a reasonable time be given *in future* for complying with the statute. See Cooley's Con. Lim. p. 376 ; Story on Const. 236, sec. 1385.

The interpretation of article 123 as perempting, *quoad* third persons, all tacit mortgages not recorded by 1st January, 1870, has become in this State a rule of property, and even if wrong in principle, we would hesitate long before we would precipitate the property interests of this State into the vortex of litigation and uncertainty which the maintenance of plaintiff's proposition would engender. See 27 A. 392 ; 26 A. 584 ; 24 A. 25 ; 20 A. 278.

We hold, therefore, that the judgment appealed from is erroneous in so far as it recognizes a legal or tacit mortgage in favor of plaintiff. Her claim has no other rank than that of an ordinary creditor of S. W. Vance.

It is therefore ordered, adjudged, and decreed that the judgment appealed from, in so far as it directs the compounding of interest, and in so far as it recognizes a legal mortgage in favor of plaintiff, is annulled and avoided ; that in all other respects said judgment is affirmed. The costs of appeal to be paid by appellees, and those below by the succession of S. W. Vance.