# Elizabeth A. Bay's Appeal.

In divorce proceedings when the evidence shows that the greatly preponderating degree of blame and misbehavior was on the part of the wife,

NOTE.—Where a divorce *a mensa et thoro* is granted the wife is entitled to alimony, but under the act of 1817 it cannot exceed one third of the husband's annual income. McClurg's Appeal, 66 Pa. 366. If the wife is possessed of a sufficient property for her own support, it will be refused. Toole v. Toole, 1 W. N. C. 96. When granted, a returning to live with the husband will suspend it. Tiffin v. Tiffin, 2 Binn. 202. But it will revive if compelled to subsequently leave by renewed cruel treatment. Nathans v. Nathans, 2 Phila. 393. And a mere offer of the husband to again cohabit with the wife will not suspend the decree unless so ordered by the court. Breinig v. Breinig, 26 Pa. 161.

The wife is also entitled to alimony when the divorce is *a vinculo matrimonii* under the act of May 8, 1854, and the amending act of June 25, 1895. Elmer v. Elmer, 150 Pa. 205, 24 Atl. 670; Shoop's Appeal, 34 Pa. 233.

even though the husband was not entirely free from blame, such fault does not constitute a legal bar to his obtaining a divorce; and if the wife's treatment is such as to render his condition intolerable and life burdensome, a divorce should be granted.

Where the testimony fully warranted the jury in finding as facts that the respondent had rendered the condition of the libelant intolerable and his life burdensome, and that she was possessed of no separate estate when the marriage took place, and was then a widow well advanced toward middle life, and that she had agreed before marriage that her share in the libelant's estate, in case of his death, should be $8,000, in lieu of dower, his estate being productive property amounting to $100,000, *held*,—

(*a*) That an allowance of $800 per annum for alimony and $500 for costs and expenses of respondent in conducting her defense, including counsel fees, was quite as liberal as she was entitled to receive.

(*b*) That it was not error in the court below to refuse to add to or to increase the allowance after final decree.

(Decided October 4, 1886.)

Appeal from a decree of the Common Pleas of Dauphin County granting a divorce and giving alimony and allowance for costs, etc. Affirmed.

James G. M. Bay filed his libel in divorce against Elizabeth A. Bay, on the grounds of cruel and barbarous treatment rendering the condition of the libelant intolerable and life burdensome. An issue was directed and the case tried before Simonton, P. J.

Aftfer the appearance of the respondent, on application of her counsel for allowance the court made the following order:

"Nov. 3, '84. It is ordered that the libelant, James G. M.

---

The amount to be allowed rests in the discretion of the court. Halferty v. Halferty, 6 Pa. Dist. R. 613, 28 Pittsb. L. J. N. S. 111; Ellis v. Ellis, 2 W. N. C. 49.

As to allowance of alimony in general, see the following editorial notes containing a full presentation of the authorities: Allowance to husband from property held by wife in divorce cases, note to Greene v. Greene, 34 L. R. A. 110; suit for alimony after decree of divorce, note to Downey v. Downey, 21 L. R. A. 677; effect of wife's subsequent misconduct upon an allowance of alimony, note to Cole v. Cole, 19 L. R. A. 811; compelling payment by contempt proceedings, note to Staples v. Staples, 24 L. R. A. 433; enforcing payment of alimony as constituting an imprisonment for debt, note to State v. Yardley, 34 L. R. A. 665.

Bay, pay to the respondent or her attorney, within ten days after notice of this order, $100 for counsel and preparing her defense, with leave before trial to move for further allowance."

On the trial the libelant testified that for many weeks during the two years preceding the application for divorce the respondent failed to get him his meals; that she frequently used the most opprobrious epithets towards him; that she repeatedly threw tumblers, cups, and buckets of coal at him, and upon two occasions a kettle full of boiling water.

He also called a number of witnesses who corroborated him in many of the above statements. One witness testified that she saw the respondent run at him with a butcher knife. Another witness heard the respondent declare that she would "shoot him, by God."

The respondent, on the other hand, testified that the libelant had choked her; had crushed her hands over a pair of shears, thereby maiming them for life; that he had often struck her on the head, and did not supply a sufficiency of food to enable her to prepare the meals. She also alleged that he undertook to smother her with escaping gas.

Several witnesses called by the respondent testified that they had seen some marks and bruises upon her neck.

The libelant, upon being recalled, declared that the respondent had knocked the gas jet off with a chair and had offered to run the shears through him, whereupon he took them away from her, using no more violence than was absolutely necessary.

The court charged the jury, *inter alia,* as follows:

We are further asked to charge by the respondent's counsel that "If a husband applying for a divorce is guilty of the same things which he alleges against his wife, his prayer will not be granted. It is not sufficient that the plaintiff is less faulty than the defendant; he must come into court with clean hands and without fault." We decline so to instruct you.

[We say, further, if you believe from all the evidence that the husband was not wholly free from fault, but that his fault was comparatively light, and provoked by his wife, such fault would not be a bar to a verdict; and this we say to you in connection with the last point that was presented by the counsel

for the respondent. The law is not as there claimed, that the husband must be entirely without fault. He may not have acted entirely as he ought to have done; but if his fault was comparatively light, and if the greatly preponderating degree of blame and misbehavior was on the part of the wife, even though he was not entirely free from blame, that would not be a legal bar to his obtaining a divorce.]

The jury found for the libelant.

During the trial of the cause, application was made for increase of allowance, but the matter did not come up for consideration until afterwards. On this hearing the respondent showed, by depositions taken for the purpose, that the libelant was the owner of productive property of the value of $100,000.

The libelant on the other hand produced an antenuptial agreement which provided that "in the event of his death Mrs. E. A. Galbraith is to receive of his estate, real or personal, the sum of $8,000 in lieu of her legal rights, as his widow, to all rights of dower or other rights accorded a widow."

The competency and relevancy of this paper were objected to by the respondent because it had been fraudulently obtained by the husband, and because it only purported to regulate or affect matters in the event of the death of James G. M. Bay, which event had not occurred. The court, however, received the paper and ordered it to be filed.

On November 4, 1885, the court filed a decree, of which the following are the material portions:

"Considering that the wife is the respondent in this case, and that the testimony fully warranted the finding of the jury, that she had rendered the condition of the libelant intolerable and his life burdensome, and that she was possessed of no separate estate when the marriage took place; and that she was then a widow well advanced toward middle life; and that she agreed before marriage that her share of the libelant's estate, in case of his death, should be $8,000, in lieu of dower; and understanding that, in a case such as this, the principal reason for the requirement of the statute (that the husband being the libelant, and making out his case, shall be decreed to pay alimony) is that the respondent may be maintained at his

expense rather than be permitted to become a charge upon the public; and having respect to the circumstances of the libelant, we think that an allowance of $800 per annum will be just and proper. . . . Libelant will also, in addition to the $100 already decreed and paid, pay the further sum of $400, to respondent or her attorneys, for costs and expenses in conducting her defense, and for counsel fees. . . ."

On November 10, 1885, a decree of divorce from the bonds of matrimony was entered, and on November 16, 1885, the respondent took this appeal and issued certiorari. Subsequently, on December 1, 1885, after bail had been entered, appeal taken, and writ issued and served, the respondent's counsel moved the court to make a further order on plaintiff for maintenance of the defendant, and also for cost of paper book and reasonable allowance for counsel to prepare and argue the case in the supreme court.

This order the court declined to make, "having already made a final order and decree in the case."

The assignments of error were: 1 The answer of the court to the above point and the portion of the charge inclosed in brackets; 2, the order of court on November 3, 1884, above quoted, fixing the allowance for counsel fees and preparing defense; 3, the admission and consideration of the antenuptial agreement; and 4, the refusal of the court, after final decree, to make an additional allowance.

*Hall & Jordan,* for appellant.——This suit is for divorce by the husband against his wife for her alleged "cruel and barbarous treatment" of him, under the act of May 8, 1854, which increases the causes of divorce and which provides as follows:

"Where the wife shall have, by cruel and barbarous treatment, rendered the condition of her husband intolerable or life burdensome: Provided: that in cases of divorce under this act if the application shall be made on the part of the husband, the court granting such divorce shall allow such support or alimony to the wife as her husband's circumstances will admit of and as the said court may deem just and proper." 1 Purdon's Digest, p. 613.

Cruel and barbarous treatment has been frequently defined by our courts as "actual personal violence or the reasonable apprehension of it, or such a course of treatment as endangers her life or health and renders cohabitation unsafe." Butler v. Butler, 1 Pars. Sel. Eq. Cas. 329; Gordon v. Gordon, 48 Pa. 226, 238; Husband, Married Women, 199, 200; Harris's Appeal, 2 W. N. C. 331.

In Gordon v. Gordon, 48 Pa. 226, it is clearly intimated that this principle will be more strictly enforced against the husband than against the wife.

The evidence does not show that any actual injury or violence was ever inflicted upon him by her at any time.

"Mere want of sympathy, disagreeable manners, ebullitions of ill temper, habitual disregard of her feelings, refusal to protect her from the insults of others,—all these, although nearly as brutal as blows, are not to be taken as just cause for separation." Breinig v. Meitzler, 23 Pa. 156, 160.

"Recrimination is a center charge, by the defendant, of a cause for divorce against the complainant. When each party has a cause for divorce, neither can obtain a divorce. Recrimination is a showing by the defendant of any cause of divorce against the plaintiff in bar of the plaintiff's cause of divorce." Stewart, Marr. & Div. § 313, and the host of authorities there cited.

"Divorce is a remedy provided for an innocent party; . . . if both parties have a right to divorce neither has; a guilty party cannot claim relief; the parties, being in pari delicto, must be left to themselves." Id. § 314; 2 Bishop, Marr. & Div. §§ 76, 78, 93.

The statute under which this divorce is sought expressly declares that "the court granting such divorce shall allow such support or alimony to the wife as her husband's circumstances will admit of;" and this is not a mere matter of discretion in the court below, but a matter of right and the subject of review.

The order of alimony is part of the final decree; and when brought up by appeal is, with all the evidence, the subject of the jurisdiction of the supreme court. McClurg's Appeal, 66 Pa. 366; Miles v. Miles, 76 Pa. 357.

The amount or quantum of alimony is not fixed by the statute, but is the subject of sound legal discretion, under the well-established legal principles relating thereto, and it is surprising with what uniformity these general principles prevail and are applied, both in England and in the several states. Stewart, Marr. & Div. § 358.

In the present English matrimonial court one third of the husband's income is taken as a sort of standard "matter of course proportion" to be allowed to the wife for permanent alimony. 2 Bishop, Marr. & Div. §§ 463, 464, 513; Stewart, Marr. & Div. § 375.

Where the wife brings no means to the marriage, and derives none by inheritance afterwards, and whatever there is was accumulated through the efforts of the husband, it is not proper, on granting the wife a divorce, to give her part of the husband's real estate in fee. The alimony in such case should not exceed one half the husband's income. Wilson v. Wilson, 102 Ill. 297.

"The application [for alimony] was not usually made in the divorce libel, but in the shape of a separate petition, alleging the husband's faculties, filed . . . in the case of permanent alimony, usually after the court's decision as to the divorce, but before the judgment, though the application could also be made at any time afterwards." Stewart, Marr. & Div. § 362.

It (alimony) may also be granted, according to the different practice, by the lower court, or by the appellate court, pending the appeal. And counsel fees may be allowed, even after the determination of the suit. Id. §§ 385, 391.

The principle here contended for by the appellant is sustained by Wood v. Wood, 7 Lans. 204, because here the application was formally made and insisted upon.

*J. C. McAlarney* and *A. J. Herr*, for appellee.—The court properly qualified the fourth point of the respondent, by declaring that if the libelant's "conduct was comparatively light and provoked by the respondent, such faults would not be a bar to a verdict."

This court has already plainly indicated its views in cases

almost identical with the one in hand, and we rely with confidence on Jones v. Jones, 66 Pa. 494, and Richards v. Richards, 1 Grant, Cas. 389.

In this state there is no rigid rule as to the amount of alimony. It will be fixed by the court, according to the circumstances of the parties and the degree of blame to be attached to either, and as the courts may deem just and proper.

The wealth of the husband can only be made the standard where his conduct calls for condemnation or when the wife's conduct is such as to commend her to the sympathy or conscience of the court.

PER CURIAM:

The issue was submitted to the jury in a clear and correct charge. The evidence justifies the verdict. Under all the facts, the sum decreed as alimony, and for costs and expenses of the appellant in conducting her defense, including counsel fees, are quite as liberal as she is entitled to receive from the appellee. There is no error in refusing to add to or increase the sum, after final decree. The amount which the counsel of the appellant may justly demand of her is not now decided.

Decree affirmed and appeal dismissed, at the costs of the appellant.