(64 South. 806.)

Nos. 19,967 and 20,004.

YOUNG, State Bank Examiner, v. TEUTONIA BANK & TRUST CO.

(Jan. 19, 1914. ·On Application for Rehearing, Feb. 16, 1914.)

*(Syllabus by the Court.)*

1. BANKS AND BANKING (§ 166*)—INSOLVENCY—PRIORITIES.

In April, 1912, the Teutonia Bank & Trust Company was placed in the hands of the State Bank Examiner for liquidation according to law. The cash on hand at the time of the failure amounted to $23,278.63. The first provisional account of the State Bank Examiner was opposed by a number of creditors, claiming to be paid by preference out of the cash on hand. These oppositions were dismissed, and the creditors appealed. *Held*, as to those creditors who had sent commercial paper to the Teutonia Bank for collection and remittance, and who in turn had received exchange, which was subsequently dishonored, that they had no lien or privilege on the fund, or any interest therein which could be identified; and further, that, according to banking usage, the Teutonia Bank had the right to mingle the collections with its own funds, in the absence of special instructions to the contrary.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 574–578, 586; Dec. Dig. § 166.*]

2. BANKS AND BANKING (§ 166*)—LIENS (§ 8*)—INSOLVENCY—PRIORITIES.

*Held*, as to certain minors and an interdict represented by the Teutonia Bank, as tutor and curator ad bona, that they had no lien or privilege on the cash fund in question to secure the balance due them by the bank as tutor or curator, and no interest therein that could be identified. In the state of Louisiana privileges are statutory, and equitable liens and trusts are not recognized.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 574–578, 586; Dec. Dig. § 166;* Liens, Cent. Dig. § 2; Dec. Dig. § 8.*]

3. PRINCIPAL AND AGENT (§ 64*)—LIEN OF PRINCIPAL—RECOVERY OF MONEY—PROOF OF IDENTITY.

The principal has no lien or privilege on money in the hands of an agent, and, to recover as owner, must prove the identity of the fund.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 113–122; Dec. Dig. § 64.*]

4. BANKS AND BANKING (§ 130*)—PAYMENT OF CHECK—LIQUIDATOR OF CORPORATION.

Where the liquidator of a corporation deposited money in a bank to his credit as such, and subsequently checked out the funds, *held*, that the bank is not responsible to the corporation for the money so drawn out, in the absence of proof that the bank had notice that the liquidator was not authorized, by an order of court, to check out the funds so deposited.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 319–325, 327; Dec. Dig. § 130.*]

5. BANKS AND BANKING (§ 77*)—INSOLVENCY — JUDGMENT OF DISTRIBUTION — APPEAL — PARTIES.

The State Bank Examiner, as representing the mass of creditors, has sufficient interest to appeal from a judgment of distribution allowing interest to some of the ordinary creditors.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 165–176½; Dec. Dig. § 77.*]

6. BANKS AND BANKING (§ 80*)—INSOLVENCY—DISTRIBUTION—INTEREST ON CLAIMS.

In a distribution among ordinary creditors, interest on their respective claims should be allowed to all or none.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 184–196; Dec. Dig. § 80.*]

Provosty, J., dissenting.

Appeal from Civil District Court, Parish of Orleans; George H. Théard, Judge.

The Teutonia Bank & Trust Company was placed in the hands of Wm. L. Young, State Bank Examiner, for liquidation, and to the first provisional account filed by him the Kansas Flour Mills Company and others filed oppositions. Certain oppositions were dismissed and others sustained, a decree was rendered homologating the account as amended, and the Kansas Flour Mills Company and others appeal. The State Bank Examiner

also appealed from the allowance of interest on certain claims. Amended and affirmed.

No. 19,967:

Dart, Kernan & Dart, F. S. Weis, Frank W. Hart, and Geo. J. Untereiner, all of New Orleans, for appellants. John J. Reilley, of New Orleans, for appellee, liquidator.

No. 20,004:

John J. Reilley, of New Orleans, for appellant, liquidator. Buck, Walsh & Buck, John P. Sullivan, Arthur Landry, and Edward M. Heath, all of New Orleans, for appellees.


LAND, J. The Teutonia Bank & Trust Company of the city of New Orleans in April, 1912, was placed in the hands of the State Bank Examiner for liquidation according to law.

On July 29th of the same year, the State Examiner filed his first provisional account, in which he proposed to pay ordinary creditors a dividend of 25 per cent. The account shows that, when the State Examiner took charge, there was cash in the vault of the bank to the amount of $23,278.63.

A number of oppositions to the homologation of the account were filed by creditors claiming to be paid by preference out of said fund of $23,278.63, and there were oppositions on other grounds.

The judge a quo, for reasons assigned, in a well-considered opinion, dismissed the oppositions of the Kansas Mills Company, the Merchants' Bank of Winona, Edward Earle Curtes, the Southern Commercial & Savings Bank, Jaslin Schmidt Company, the minors Sophie Butterworth, Mary Sievers et al., the minor Harvey, the interdict, Laura Pfister, Mrs. Clara Daige, the liquidators of the Pelican Iron Works, Thomas J. McEvoy, Val Leonard, the succession of Jean Boubede, and Mrs. J. G. Daigre, testamentary executrix.

The judge a quo amended the account by sustaining 14 other oppositions, and rendered a decree homologating the account as amended.

The Kansas Flour Mills Company, the Merchants' Bank of Winona, the Pelican Iron Works, the German-American Savings Bank, as curator of the interdict, Laura Pfister, the undertutor of the minors Rebecca and Laura Harvey, Otto Wells, Mary E. John, and Elizabeth Sievers, and City Bank & Trust Company, as tutor of the minor Edward John Sievers, have appealed.

Later the State Bank Examiner appealed from the judgment only in so far as the decree allowed interest on the claims of certain opponents.

We shall take up the oppositions in the order in which they were considered and disposed of by the learned judge a quo.

Opposition of Kansas Flour Mills Company.

[1] On March 25, 1912, this company drew a sight draft for $861.64, to the order of the Citizens' National Bank of Anthony, Kan., on the Leidenheimer Banking Company of the city of New Orleans; and said bank forwarded said draft to the Teutonia Bank & Trust Company, with specific instructions to collect and remit the proceeds to the sending bank. The Teutonia Bank & Trust Company collected said draft on April 8, 1912, and on April 10, 1912, remitted the proceeds, less charges, to the Citizens' National Bank, by a draft on the National Park Bank of New York City for $860.75. Upon presentation to said bank, the draft was dishonored and duly protested; the ground of dishonor being that the Teutonia Bank & Trust Company had been placed in the hands of the State Bank Examiner. When that official took charge of the Teutonia Bank & Trust Company, there was cash in the vaults to the amount of $23,278.63. Checks, notes, and drafts of parties having no accounts with said bank, which had been forwarded to it for collection and remittance, and had been

collected, amounted to $7,493.43. Neither the Kansas Flour Mills Company nor the Citizens' National Bank had an account as depositors with the Teutonia Bank & Trust Company. The proceeds of the drafts collected were not kept separate and apart, but were mixed with the general funds of the bank. Prior collections made by the Teutonia Bank & Trust Company for account of the Citizens' National Bank had been always remitted to the latter by draft on the National Park Bank of New York. The Teutonia Bank & Trust Company was insolvent at the time it received said draft for collection, and when it was placed in charge of the State Bank Examiner. A memorandum of checks, notes, and drafts sent to the Teutonia Bank & Trust Company for collection was made on its out of town collection book.

[3] The learned judge below overruled the opposition, for the reasons that the relation between the two banks was that of principal and agent; that, under the provisions of the Civil Code, the property of the debtor is the common pledge of his creditors, "and the proceeds of its sale must be distributed among them ratably, unless there exist among the creditors some lawful causes of preference" (article 3183); that "lawful causes of preference are privileges and mortgages" (article 3184); that nowhere in the Civil Code or in the statutes can there be found the express grant of a privilege to secure a debt arising out of a mandate.

In Longbottom's Executors v. Babcock, 9 La. 50, the court said:

"The evidence in the record shows that the deceased was the attorney in fact of Cotton Henry, during his absence from the state, and that before his departure he had given his agent a check on one of the banks. for $1,300, to be disbursed on his account, and that the sum of $1,100 was found in the store of the deceased at the time of his death. But there is no evidence to show that this sum is the same money received by the testator. Article 3189, relied on by the opponent, requires, in order that the depositor may exercise his right of privilege, proof of the identity of the thing deposited. It is of the essence of the deposit that the depository should be bound to keep the thing deposited and restore it in kind to the depositor. In this case the money appears to have gone into the hands of Longbottom as the agent of Cotton Henry. He was bound to account for it, but not to restore it in kind. He did disburse a part of it for the use of his principal.

"We therefore think the court acted correctly in rejecting the opponents' claim as a privileged one."

The court which rendered the opinion in the cited case was composed of Martin, Matthews, and Bullard, all standing in the front rank of our most distinguished jurists.

In Whatley. v. Austin, 1 Rob. 22, the court said:

"For mismanagement or failure to pay over money received, no privilege is given upon the property of an agent, and the privilege given to the depositor is only upon the price of the thing deposited, if it has been sold. Civ. Code, art. 2933. It may be, if plaintiff can prove that the funds on hand at the time of the death of Bryan, or those in the hands of Ledoux & Co., at that period, were the proceeds of her cotton, which Bryan had shipped, that she might claim the amount as being her property, and not forming a part of her succession."

In Succession of Stone, 31 La. Ann. 314, the court said:

"Mrs. Harvey is recognized as a creditor for $1,025.20. * * * The deceased, Stone, acted as her agent, and received this sum of money for her—collected her rents and accounts. The administrator admitted it as a privilege. Upon what? It appears the privilege is supposed to .rest upon any money in Stone's possession. There was none found there, so far as this record informs us. It is not alleged that he kept her money separate and apart, labeled and capable of identification.

"It is clear that his succession is liable for the sum collected for her, and it is equally clear that she has not a privilege upon any special funds for its payment. There is no evidence of the existence of any special fund. Longbottom v. Babcock, 9 La. 44; Whatley v. Austin, 1 Rob. 21."

In State ex rel. Girardey v. Southern Bank, 33 La. Ann. 957, the Bank of Commerce sent three checks for collection to the Southern Bank, and the checks were collected and the proceeds passed to the credit of the Bank of Commerce in its *general account*,

as it had given no special instructions as to the disposition of the money, but, on the contrary, drew against the proceeds of the checks. The court held that the Bank of Commerce was an ordinary depositor.

In the statement of the contention of the Bank of Commerce, appear the following paragraphs:

"The relation between the two banks was that of principal and agent, and not that of depositor and depository.

"When the agent mixes the funds of his principal with his own, so that they cannot be distinguished, the whole becomes trust property, and the demand of the principal upon the fund must be first satisfied.

"The defendant, Southern Bank, on the other hand contends," etc.

The court found on the facts that there was—

"nothing to take this transaction out of the rules governing the liabilities and responsibilities as to ordinary depositors in banks, * * * and subjects it to the operation of those in regard to principal and agent, or gives to the Southern Bank the character of cestui que trust."

The reference of the court to trust relations between principal and agent was mere obiter.

In the case of the Louisiana Savings Bank & Safe Deposit Co., 40 La. Ann. 514, 4 South. 30, a fund belonging to an estate was deposited by order of court in the Louisiana Savings Bank, and later the court ordered the withdrawal of the fund and the investment thereof by the tutrix in United States bonds. The president of the bank informed the tutrix that no United States bonds could then be purchased in New Orleans, but he would take the money and send it to Washington City, and there purchase the bonds for the heirs.

"To this the tutrix agreed, and surrendered her bank book, and received two certificates of deposit, one for the shares of the two youngest heirs, and the other for the oldest, who had then been emancipated, accompanied by the assurance of the president of the bank that these certificates would be exchanged for the bonds as soon as they arrived, which, it was stated, would be about the 7th of July. The bonds never came; the investment was never made, in fact, and the bank failed—closing its doors on the 30th of June.

The certificates aggregated $9,866.15; and, when the bank failed, it had on hand $32,639.42 in cash. The minor heirs claimed that their deposit was a special deposit, entitling them to be paid by preference over all other creditors. The court held that the claim of the heirs was a mere ordinary debt. In discussing the question of deposit, the court said:

"It will be seen that the essential condition of a deposit—a real or special deposit—is that the thing deposited can be identified. * * * That the fund deposited more than a year before could be identified and taken from the moneys found in the bank would certainly seem impossible, and even that any of this original fund remained and made part of this balance found is highly improbable.

"Yet this identification is essential."

The court quoted at length from the Longbottom Case, 9 La. 50, and the opinion concludes as follows:

"The counsel for opponents claim that the identification of the fund was sufficient, because the bank, when it failed, had in its possession cash exceeding in amount the deposit. We have before adverted to the extreme improbability that any part of this money was part or parcel of the fund originally deposited. But the authority of the case in 9 La., above cited, is, as we have seen, directly opposed to such contention.

"It is true that authorities from other states were cited by the counsel of the opponents that undoubtedly supported their argument, and especially on this particular point, but they belong to a different system, and were the enunciations of equity courts relating to trusts, express or implied, and to trust funds.

"While they are authorities entitled to respect, we cannot yield to them, in the face of the positive declarations of our written law, and the settled jurisprudence.

"The claim was properly construed to be an ordinary debt of the bank, and the privilege rejected."

The Longbottom Case in stare decisis, and as between principal and agent, established the following rules:

(1) That the principal has no lien or privilege on the property of the agent.

(2) That the agent is bound to account for the money of his principal, but not to restore it in kind.

(3) That the principal cannot recover money in the hands of his agent, in the absence of proof that the sum is the same money received from the principal.

(4) That, in a case of a special deposit, the exercise of the privilege of the depositor depends on proof of the identity of the thing deposited.

It follows from the cases cited supra that the opponent has no privilege or lien on the cash in the hands of the savings bank at the time of its failure, and that he cannot, as owner, recover any portion thereof, in the absence of proof of the identity of the fund. It is self-evident that no such proof can be made in a case of this kind. The cash on hand when the savings bank failed represented the residuum of receipts, deposits, and collections made by the bank for an indefinite period. It is well known that most of the receipts and collections of any bank in the city of New Orleans are in the form of checks on other local banks, that such checks pass through the clearing house, and that no money is paid except to settle differences. Under such a system it is impossible to prove that cash in any bank represents the proceeds of particular checks.

The custom of banks is to mingle collection money with their general funds, and to treat it as their own, and to send their own checks in remittance.

The great weight of authority in other jurisdictions is to the effect that banks and other senders of paper for collection and remittance are presumed to know of this custom and to intend to abide by it, unless collections are sent with special instructions to the contrary; and that the operation of this custom is to transfer the ownership of the money to the bank, the customer becoming, the moment the money is thus mingled, a mere creditor of the bank for the amount. See 2 A. & E. E. of L. 819, 820, 821; Morse on Banks, 590; Zane on Banks and Banking, § 178, p. 301; Tiffany on Banks and Banking, 207. There are common-law decisions to the contrary, but the authorities cited supra are more in accord with our own jurisprudence based on the provisions of the Civil Code.

These considerations dispose of the opposition in question, and others of a similar character.

Opposition of German-American Savings Bank & Trust Company, Dative Tutor of the Minor Paul Y. Mouchon.

[2] The Teutonia Bank & Trust Company was, under Act No. 45 of 1902, appointed tutor of said minor, and, as such, was vested with the care, custody, and administration of his property.

The said Bank & Trust Company received for account of said minor the sum of $2,696.64, on which it agreed with the under-tutor to pay interest at 5 per cent. per annum in quarterly installments. The bank thereupon opened an account with said minor, and mingled the minor's money with the general funds. The interest was paid up to January, 1912.

Our learned brother below, in his reasons for judgment, said:

"The opponent, however, claims that the minor's funds should, under the law, have been kept separate and apart from the bank's funds, and as a separate deposit, and as a trust fund, and that the minor is entitled to payment by preference.

"It is repeated here that neither our law nor our jurisprudence recognizes trusts, express or implied, or equitable liens to secure the same and to protect a principal against the misappropriation or unlawful conversion of his funds by his agent.

"Moreover, the lawmaker, in Act No. 45 of 1902, § 2, has prescribed the security for funds received by banks organized under said act, as tutors, curators, administrators, testamentary executors, etc., and the court cannot add to the security without trenching upon the legislative domain."

Under section 1 of said act, a bank appointed tutor ad bona is bound to account, and is entitled to the same compensation, as a natural person acting in a similar capacity. Section 2 provides that, when a court appoints a savings bank or trust company as tutor:

"The capital stock as paid in shall be taken and considered as security required by law for the faithful performance of its duties as such fiduciary; provided the court shall have the right to require other security, if it shall deem proper."

Section 8 provides that all funds held by the bank as agent or trustee may be invested in certain kinds of bonds paying a dividend of not less than 4 per cent. interest, and concludes as follows:

"None of the funds * * * held by such a bank as agent or trustee shall be counted among the assets or liabilities of such bank in making the statements required by law to be published of the affairs of such bank."

"Sec. 10. Nothing in this act, or in any other of the acts of the state on the same subject matter, shall be construed as authorizing the constitution of any agency or trust * * * which is contrary to the public policy of this state of Louisiana, or which seeks to place the property of persons or estates in this state out of commerce, in contravention of the laws of inheritance of this state, or of the prohibitions therein contained against fidei commissa and substitutions."

The said act assumes that the bank will keep accounts with minors, interdicts, etc., but provides that the same shall not be counted among the assets or liabilities of the bank in making the statements required by law.

The act does not provide for a *special* deposit of the funds of the minor, interdict, etc., or the keeping of such funds separate and apart from the general fund of the bank.

Where Act No. 45 of 1902 does not otherwise provide, the duties, rights, and obligations of a bank appointed tutor ad bona for a minor or interdict are the same as those prescribed by law in cases of ordinary tutorship.

The tutor is bound to invest the funds of the minor and his surplus and revenues, whenever they amount to $500. In default thereof, the tutor is bound to pay on such excess the rate of interest allowed by law. Civil Code, art. 347. Fuselier v. Babineau, 14 La. Ann. 769; Vance, 32 La. Ann. 186.

Under the Civil Code, the minor has no privilege or lien on the movables or money of the tutor; but his faithful administration is secured by bond, or a general or special mortgage on his immovables.

There is in this state no such thing as an equitable lien on money, movables, or other property. With us a lien or privilege is stricti juris, and must be expressly created by law.

The contention of the opponent is that the money of the minor was wrongfully mingled with the funds of the bank, and the minor, therefore, continued to be owner; and that the only legal effect of the mingling of the funds of the minor with the moneys of the bank was to substitute for the trust fund received and mingled a like amount to be taken out of the common fund.

Whatever support these propositions may find in cases decided in other jurisdictions, they are contrary to our well-settled jurisprudence, based on the provisions of the Civil Code, as hereinbefore set forth.

In the case of deposits made a year or more before the failure of the bank, it is impossible to identify them with the comparatively small amount of cash on hand at that time.

This opposition was properly dismissed by the judge a quo. The other oppositions, involving the same question of law, were also properly dismissed.

The opposition of Otto Wells may be disposed of by the statement that he was a purchaser of exchange from the Teutonia Bank & Trust Company while it was a going concern, and that the transaction was a sale, and the subsequent nonpayment of the bill

of exchange made him an ordinary creditor of the amount thereof.

[4] The opposition of the liquidator of the Pelican Iron Works is without merit. A former liquidator of the same concern deposited funds in the bank to his credit as such, and subsequently drew them out. The funds so drawn were not accounted for by the liquidator.

The fact that the funds were drawn out without an order of court is not shown to have been known to the bank, and therefore the bank is not responsible for the subsequent loss. See State v. Calcasieu National Bank (on rehearing) 132 La. 887, 61 South. 857.

[5] The appeal of the State Bank Examiner is restricted to the allowance of interest on the claims of certain creditors.

Of this allowance of interest none of the creditors, who were not allowed interest, complain in this court, and it is urged that the State Bank Examiner has no interest or standing to prosecute his appeal.

In the case of Ferguson & Hall et al. v. Their Creditors, 19 La. 278, the court held that the syndic of an insolvent estate could not appeal from a judgment *reducing* or *rejecting* the claims of a particular creditor, or denying to a creditor a privilege on the assets, because, said Martin, J.:

"To the mass of the creditors whose interests the syndic represents, it was beneficial."

In the same case the syndic was allowed an appeal from a judgment taking a claim from the list of ordinary creditors, and recognizing it as privileged, because such judgment diminished the assets to be divided among the mass of creditors represented by the syndic. This decision was followed in Pandelly v. His Creditors, 1 La. Ann. 21. In Kohn v. Wagner, 1 Rob. 275, there was nothing coming to the ordinary creditors, and the court held that in such a case the syndic could not appeal from a judgment settling the rank of mortgage creditors. In Beer & Co. v. Their Creditors, 12 La. Ann. 774, the court said:

"The creditors whose claims have been disallowed by the judgment are alone aggrieved by it, and not the estate represented by the syndic. In conflicts between creditors, in which the syndic is without interest, he cannot be permitted to interfere. Ferguson et al. v. Their Creditors, 19 La. 278; Kohn, Syndic, v. Wagner, 1 Rob. 275; Pandelly v. His Creditors, 1 La. Ann. 22."

The three last cases are cited by opponents.

As the allowance of interest to some of the creditors by the judgment below increases the dividend coming to each of them, and, as a result, diminishes pro tanto the dividend accruing to the mass of creditors, represented by the State Bank Examiner, we think that he has a sufficient interest to appeal from the judgment.

[6] Inasmuch as interest has not been allowed to other ordinary creditors in the provisional distribution, the opponents can be allowed none. The matter of interest on claims of creditors can be determined and settled in the next distribution.

It is therefore ordered that the judgment below be amended by striking out all allowances for interest on the claims of ordinary creditors, without prejudice to their right to hereafter claim interest, and it is further ordered that, as thus amended, the judgment below be affirmed.

It is further ordered that the costs of appeal in case No. 19,967 be paid by the appellants, and in case No. 20,004 by the appellee.

PROVOSTY, J., dissents in part, and hands down reasons.

## On Application for Rehearing.

PER CURIAM. In the foregoing reasons for judgment, we followed the order adopted by the learned district judge in considering and disposing of the oppositions submitted to him; and we adopt his reasons in disposing of the opposition of the minor

Mouchon, although the tutor of said minor has not appealed. Those reasons were applied by the trial judge to the oppositions of others similarly placed; and we make the same application in our opinion.

Rehearing refused.

See dissenting opinion of PROVOSTY, J., 64 South. 811.