————————o————————

No. 7099.

## SUCCESSION OF ALPHONSE HARRIS.

### Syllabus.

One depositing money in a bank to his account under an ordinary pass book and checking account enjoys no privilege upon the funds of the bank.

A principal has no privilege upon the property of his agent for the reimbursement of money collected by him.

There is in this State no such right as an equitable privilege on money, movables or other property.

The principal may pursue and recover his property or the proceeds thereof, even if that property be money, in the hands of the agent or of his representatives, whenever the principal can identify and distinguish it from the property of his agent.

The object of Act 207 of 1906 was not to proscribe the witness for want of "good moral character", but to affect his credibility.

Appeal from the Civil District Court, Parish of Orleans, No. 116,465, Division "D"; Honorable Porter Parker, Judge. Reversed.

George Montgomery, for plaintiff and appellee.

B. Y. Wolf & E. J. Jacquet, for defendant and appellant.

His Honor, CHARLES F. CLAIBORNE, rendered the opinion and decree of the Court, as follows:

Opponents herein seek to recover as their own property certain sums of money which they allege were collected for rents for their account by their agent, the deceased, and by him deposited in bank to his own account.

Alphonse Harris died on May 6th, 1916; his succession was opened by his widow; she was appointed administratrix. The inventory showed that his succession consisted of an item of $274.76 deposited by him to the credit of an account kept in his name in the Hibernia Bank, and an undivided one-half interest in real estate, appraised at $1500 for the half interest, and a half interest in the partnership of Danove and Harris not appraised. This real estate was subsequently sold as a whole for $875 to effect a partition, leaving nothing for the owners after paying costs and a mortgage upon it.

The administratrix filed an account by which she proposed to distribute the only asset in her hand, that is the sum of $274.76 deposited in the Hibernia Bank. It was absorbed by law charges and the widow in necessitous circumstances.

This account was opposed by Dr. Jensen and George Long. They averred that the deceased was their agent for the purpose of collecting their rents; that, in that capacity, he had collected for their account $299.50 for which he had not accounted to them; that said amount had been deposited in the Hibernia Bank in his name, although it belonged to them; that if it did not belong to them they were entitled to be paid by preference and priority over all other creditors because it was a trust fund upon which they had an equitable lien; and that the administratrix had failed to account for the proceeds of the real estate; they opposed each and every item on the debit side of said account, and allged that the sale of the real estate was null and void on several grounds.

There was judgment in favor of the opponents recognizing them as creditors of the succession in the sum of $299.50, and entitling them to be paid by preference and priority over all other creditors out of the funds on deposit in the Hibernia Bank to the credit of the succession of Alphonse Harris, $274.76, "upon which fund the lien and privilege of opponents as depositaries is recognized and ordered enforced."

From this judgment the widow individually and as administratrix and other creditors on the account have appealed.

We are of the opinion that there is error in that part of the judgment recognizing any privilege or right of preference or priority in favor of the opponents upon this fund in the Hibernia Bank. 1st. The opponents claim it by virtue of article C. C. 3261 (3228), conferring a privlege in favor of the depositor upon the thing deposited. But they were not the depositors; it was Harris who made the deposit. 2nd. Even he was not entitled to a privilege. This article refers to regular deposits, not to irregular bank deposits. One depositing money in bank to his account under an ordinary pass book and checking account, enjoys no privilege, because money so deposited, by mutual consent and common understanding ceases to belong to the depositor and bcomes the property of the bank with power to use it in its business, and is mingled with its other assets, and the depositor remains only an ordinary creditor of the bank for the amount deposited.

C. C. 3222 (3189): "He who deposits a thing in the hands of another still remains the owner of it."

C. C. 2963 (2934):

> "The only real deposit is that where the depositary receives a thing to be preserved in kind, without the

447

power of using it, and on the condition that he is to restore the identical object."

134 *La.*, 879; 135 *La.*, 65.

3rd. Neither have the opponents, as principals, any privilege upon the property of their agent for the reimbursement of money collected by him. 9 La., 44; 1 R., 21; 31 A., 311; 134 La., 879.

4th. "There is in this State no such thing as an equitable lien on money, movables or other property. With us a lien or privilege is *stricti juris,* and must be expressly created by law." 134 La., 879 (890).

The only right that opponents can assert upon the fund for distribution is one of ownership, by identifying the fund as the proceeds of the rents of their properties collected by Harris and depositd by him to his account.

The appellees have recognized this by their answer to the appeal praying to be recognized as such owners. The law of the case is established by several decisions of our Supreme Court.

Thus in the early case of *Clay v. His Creditors,* 9 *M.,* 519, Grew had placed in the hands of the insolvent as security notes and bills of exchange to the amount of $12,000. Grew claimed to be classed as a privileged creditor. The Supreme Court said:

> "These authorities are in my opinion, decisive on the question. They establish the principle, that when the debtor receives property by a contract which in its nature, does not transfer the dominion or right in it, that the owner retains the privilege of being paid in preference to other creditors, * * * and that if the thing be alienated, there is the same privilege on the price."

In *L'Hommedieu v. Perry,* 6 *La.,* 599, the plaintiff consigned a quantity of lime to Perry who sold it for account

448

of plaintiff. Among the purchasers was Bosque who gave his note payable at five months to Perry for $1412.44. Perry died; executors were appointed to his will and they collected the note and held the proceeds. The Supreme Court said:

> "The present suit was instituted to enforce the plaintiff's right to have the amount of the note separated from the estate of the deceased and paid over to him. This was decreed by the Court of Probates and the executors appealed. The judgment of the Court of Probates appears to us perfectly correct. The deceased was the plaintiff's factor. The note belonged to the former, and ought to have been returned to him without being mingled with those of the deceased; so must the proceeds."

The leading case on the question is that of *Longbottom v. Babcock, 9 La.,* 44. Cotton Henry claimed to be paid by privilege $1100 under the following circumstances: Longbottom had been the agent of Cotton Henry; he had received from Henry a check for $1300 to be disbursed for his account; after his death $1100 were found in his store. Henry claimed to be paid this amount by privilege. The Court held, that there was no evidence to show that this sum is the same money received by the testator from Henry, and denied his claim.

In discussing this case in *Young v. Teutonia Bank,* 134 *La.,* 879 (886), the Supreme Court said:

> "The *Longbottom case* is *stare decisis,* and as between principal and agent, established the following rules:
>
> "1. That the principal has no lien or privilege on the property of the agent;
>
> "2. That the agent is bound to account for the money of his principal, but not to restore it in kind;

449

"3. That the principal cannot recover money in the hands of his agent, in the absence of proof that the sum is the same money received from the principal, and

"4. That in a case of a special deposit, the exercise of the privilege of the depositor depends on proof of the identity of the thing deposited."

In the case of *Whatley v. Austin*, 1 *R.*, 21, the plaintiff had delivered to one Bryan her crop of cotton to be sold by him, and the proceeds paid to her. The cotton was sold by his factors and the proceeds amounting to $1115.61 were placed on their books to the credit of Bryan; he died before paying over any of the proceeds to the plaintiff; at the time of his death there remained to his credit on the books of the factors $701.83 and he had $118.00.

The probate judge gave judgment in favor of Whatley for $1115.61 "with privilege against the succession." The Supreme Court said that the law accorded no privilege to the principal "upon the property of an agent," and added:

"It may be, if the plaintiff can prove that the fund in hand at the time of the death of Bryan, or those in the hands of Ledoux & Co. at that period, were the proceeds of her cotton, which Bryan had shipped, that she might claim the amount as being her property, and not forming a part of the succession, in which event she would have to enter any sum so recovered as a credit upon the present demand."

In *Bloodworth v. Jacobs*, 2 *A.*, 24 (29), the following quotation is adopted:

"The product or substitute of the original thing, still follows the nature of the thing itself so long as it can be ascertained to be such, and the property of a principal entrusted to his factor for a special purpose, is still taken to belong to the principal, not-

450

withstanding any change of form it may have under-
gone, so long as it can be identified and distinguish-
ed from all other property."

*Russell on Factors and Brokers,* 273.

In the case of *Stetson v. Gurney,* 17 *La.,* 162, the facts
were as follows: Robertson had made large advances to
the defendant, Gurney, as broker to buy cotton for him;
Gurney deposited the money in the bank to his own credit.
This the plaintiff seized. Robertson filed a third opposition
claiming the money as his. The Court said, p. 165:

> "The counsel for Robertson relies upon the prin-
> ciple well settled between principal and agent, that
> whenever the former can identify his property or
> its proceeds in the hands of his factor he is entitled
> to recover it," quoting 3 *Mason,* 235.

But the Court was "of opinion that when money is con-
fided to an agent to be employed in purchases," the case
was quite different because the money becomes the prop-
erty of the agent who becomes indebted for it to the prin-
cipal. "The relation of debtor and creditor arises between
them, not that of depositor and depositary." Affirming
*Longbottom,* 9 *La.,* 44.

In *Beatty v. McLeod,* 11 *A.,* 76, it was said that the
maxim that money has no identity when applied to agents
"has never been held to extend to cases where the money
has become capable of a complete identification from the
manner in which it has been kept, as in packages labeled
in the name of the principal, or deposited by the agent in
bank in the name of his principal."

In the *Succession of Stone,* 31 *A.,* 311, it was held that
the principal had no right of preference on the property of
his agent for money collected for rents and accounts, be-
cause there was no money found in the succession, nor had

the principal's money been kept by the agent "separate and apart, labelled and capable of identification."

In the case of *McDonogh v. Delassus*, 10 *R.*, 481 (488) the Court said:

> "We are not prepared to establish, as a general rule that the relation of principal and agent, is that of creditor and debtor as soon as the latter receives money or property for the former. We regard it as something more; it is a trust; and the receipt of the money or property does not give the agent a title to it, which would be the case if he be regarded as a debtor alone." Also 6 *A.*, 40.

But in the *Succession of Boisblanc*, 32 *A.*, 109, the opinions in Longbottom and Stetson, quoted above, were interpreted, and the broad principle adopted, as expressed in the syllabus, that the principal may pursue and recover his property or the proceeds thereof, even if that property be money, in the hands of the agent or his representative, whenever the principal can identify and distinguish it from the property of his agent

The facts of that case were as follows: In the latter part of December 1878, McCullough & Sons of Louisville, Ky., remitted to Boïsblanc, a sugar broker, at New Orleans to be invested by him in sugar and molasses for their account a bank check on New York for $1500.00 to their order, which they specially endorsed to the order of Boisblanc. On December 26, Boisblanc discounted this check and deposited the net proceeds $1494.38 in the Germania Bank to the credit of his individual account; on the same day he deposited $316.80 in the same bank also to the credit of the same account. On Dec. 27th, he drew a check against said account for $491.15. Shortly after he was taken sick and died on January 2nd, 1879. His bank book

was balanced on December 31st, 1878, and showed a balance of $1398.46 to his credit, or $95.92 less than the amount of McCullough's check. McCullough and the administrator of Boisblanc both claimed this balance of $1398.46. The bank paid it to the administrator; but the Probate Court decided that McCullough was entitled to it. The Supreme Court reviewed the two cases of Longbottom and Stetson and said of them, p. 110:

> "The Court recognized the doctrine which we do not consider questionable, that the principal is entitled to recover whenever he can trace his own property, and distinguish it or its proceeds from the mass of the property of his agent. Manifestly both these cases were decided upon the conviction of the Court that the persons claiming the money had failed to identify it, or to prove that it belonged to them respectively."

The Court concluded by saying that the balance of $1398.46 remaining in bank was fully identified as McCullough's money and that he was entitled to it. "The identification is as complete as it could have been if an equal sum of money had been placed in a sealed package and specially deposited."

To the same effect are the commentators on the Common Law. *Story on Agency*, §229-231; *Mechem Agency*, §780; 2 *Kent*, §623; 2 *Story's Equity Jur.*, §1258-1261; 1 *Am. & Eng. Enc. Law*, p. 1175 (2); 31 *Cyc.* 1605 (e); 2 *Corpus Juris*, p. 881, §567; 13 *Cal.* 133; 6 *S. W.* 802; 151 *Mass.* 109; 52 *N. Y.* 1; 105 *Mass.* 257; 87 *Wisc.* 237; 105 *N. Y.* 256; 2 *L. R. A.* 480; 29 *L. R. A.* 226 (250); 58 *N. W.* 383; 56 *L. R. A.* 875; 8 *L. R. A.* 666; 104 *U. S.* 54, 68; 137 *U. S.* 411. See also 43 *A.* 588.

There is nothing contrary to these principles in the *Teutonia Bank cases*, 134 *La.* 879, 887 and 135 *La.* 65. In

those two cases customers of the bank alleged that the bank had collected for their account certain sums of money and that they were entitled to be paid by preference out of the funds of the bank. The Court held that the law gave no privilege to the principal upon the property of his agent; that the amount of the collections had become mingled with the other general funds of the bank and could not be distinguished from its other assets; and because the customers of the bank had ceased to be owners of the collection themselves and were only ordinary creditors of the bank for their amount since the collections had not been made under special instructions and had not been kept as separate and distinct deposits; quoting many authorities and affirming *State ex rel Girady v. Southern Bank*, 33 A., 957; 40 A. 514.

These two cases did not repudiate the doctrine of the *Succession of Boisblanc*. They merely applied different rules to different situations. The claim in Boisblanc was one of ownership, while in the *Teutonia Bank cases* it was one of creditor pretending to a privilege. 37 A. 515.

It will thus be seen that the doctrine has always been recognized; it is only the perplexing question of fact, of tracing, identifying and separating the trust money which has rendered the application of the rule difficult and of rare application.

Have the opponents in this case met the requirements of the law and identified the money they claim as their money?

Dr. Jensen testified that he and Long own considerable real estate, and that Alphonse Harris, of the firm of M. & A. Harris, did his collecting of rents for about ten years; he produced a book in the handwriting of Harris showing

454

the numbers of his properties and the amount of collections made and not accounted for; also a typewritten list made by him of the monthly collections from April 6th, to May 7th, 1916, due to him according to Harris' book, from which it appears that Harris collected $299.50 less $19 for repairs, leaving a balance of $280.50; Harris deposited his monthly collections in the Hibernia Bank, and settled with him monthly with checks on that bank; Harris had only one other rent collection besides his for about $20 and that was a Jewish congregation; the day before he died he deposited his collections to the amount of $144 of witness' rents; Harris had no other source of income; witness made the typewritten list from Harris' book and also from a comparison of receipts in the tenant's hands signed by Harris.

Mrs. Poirer deposed that she was familiar with Harris' business; that he was engaged in the rat-proofing business and collected rents for Dr. Jensen and Mr. Long and for a Jewish congregation; for the last three months he made no collection for the congregation; he went away and before he left he gave her some receipts and told her to collect the rents for him, but not to go before the 4th of May; she collected $14 on the morning of the 4th which was a Friday; Harris returned the same day and in the evening went out collecting himself, that same day, and when he came home at night he made his account and said he was going to deposit the money in bank on Saturday and she saw the bank deposit slip made by him which was for $144; he died on Sunday the 6th of May; she gave the pass book to Mr. Jacquet and told him that all the money in it was for Dr. Jensen and Mr. Long, because that was Harris' private book for his collections, because he had another book for his business with Danove & Harris; he

455

had no other income and had no money of his own; witness lived with the deceased as his wife but they were not married.

As regards this testimony of this last witness, the administratrix contends that it should not be considered in the presence of Act 207 of 1906, p. 361, which reads as follows:

> "Parole evidence shall be incompetent to prove any debt or liability upon the part of a party deceased, except it consist of the testimony of at least one credible witness of good moral character besides the plaintiff; or except it be to corroborate a written acknowledgment or promise to pay signed by the debtor."

The object of the statute was not to proscribe a witness because of his want of "good moral character" but to affect his credibility and destroy the effect of his testimony. In the case of *State v. Hobgood*, 46 A. 855, it was decided that the veracity of a female witness could not be attacked by proving her bad character for chastity. The Court said: "The inquiry must be into general character of the witness and not as to any particular act or any particular line of conduct."

The memorandum book kept by the deceased Harris of the rents collected by him, in his own handwriting, contains a list of the houses belonging to opponents, showing an average renting capacity exceeding $200 a month; the monthly deposits in his bank account correspond with that amount; he deposited all rents collected for opponents in the Hibernia Bank; he made no collctions for the congregation for three months prior to his death, and made no deposits of his own or anybody else's money during April and May, and had no money to make any. These facts lead

to the irresistible conclusion that the deposits made by him in the Hibernia Bank during April and May were the proceeds of the collections of rent for account of opponents. It would be difficult to more positively identify a fund. It is true that on March 21st there appears an entry to his credit of a note discounted of $100.20; but the presumption is that the checks he subsequently drew were against that item which was his and not against the rent deposits which did not belong to him. If we add to this evidence the testimony of Mrs. Poirer, who swears that $144.95 deposited in the bank by Harris on May 6th the day before his death, were the proceeds of the rent of opponents' properties, however weak *per se* that testimony may be, both from the fact that it emanates from a witness who may not enjoy "moral character" and from the admission of a dead man, we think opponents have established a certain case, because the testimony of that witness is corroborated by surrounding circumstances. There is no evidence to contradict it, and no suspicion of its falsity. The Judge of the lower Court believed it and so must we. But we think the opponents have established their claim only to the amount of $245.50.

It is therefore ordered, adjudged and decreed that the judgment of the District Court recognizing the opponents herein, Dr. Harold L. Jensen and George Long, as creditors of the *Succession of Alphonse Harris* for the sum of $299.50, two hundred and ninety-nine and 50/100 dollars, be reduced to two hundred and forty-five and 50/100 dollars ($245.50) ; that so much of said judgment that decrees that said opponents be paid by preference and priority over other creditors with the privilege of depositaries be annulled and reversed; and it is now ordred that said opponents be recognized as owners of the sum of Two Hun-

457

dred and Forty-five 50/100 Dollars, being part of the balance to the credit of the account of Alphonse Harris in the Hibernia Bank & Trust Company at the time of his death and part of the fund for distribution upon the account of the administratrix herein, and that the said administratrix be ordered to pay said sum to said opponents with their costs in the lower court, costs of appeal to be paid by opponents and appelees.

Judgment reversed and amended.

Opinion and decree, June 30th, 1917.

Rehearing refused, July 17th, 1917.